[No. D029241. Fourth Dist., Div. One. Dec. 3, 1998.]

THE PEOPLE, Plaintiff and Respondent, v.
GABRIEL PEREZ, Defendant and appellant.

## COUNSEL

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Garrett Beaumont and Peter Quon, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**McDONALD, J.**—Gabriel Perez (Perez) appeals an order granting Perez deferred entry of judgment under Penal Code[1] section 1000 following his guilty plea to one count of possession of cocaine, a controlled substance (Health & Saf. Code, § 11350, subd. (a)).[2] Perez contends the trial court erred by denying his motion for application of section 1000 as it existed on

---

[1]All statutory references are to the Penal Code unless otherwise specified.

[2]The order is appealable because it is equivalent to an order granting probation, which is deemed to be an appealable final judgment under section 1237, subdivision (a).

the date of his 1996 offense rather than as it existed on the 1997 date of the filing of the complaint. He argues the amendments to section 1000 effective January 1, 1997, should be interpreted to apply prospectively to offenses committed on and after January 1, 1997, not retrospectively to offenses committed prior to 1997. He further argues that application of the 1997 amendments to pre-1997 offenses would violate the constitutional prohibition against ex post facto laws. We conclude that as a matter of statutory interpretation the January 1, 1997 amendments to section 1000 apply to offenses committed only on or after January 1, 1997. We therefore reverse the order and remand the matter with directions that Perez be permitted to withdraw his guilty plea and be considered for diversion under the pre-1997 amendment form of section 1000.

### FACTUAL AND PROCEDURAL BACKGROUND

About 1:00 a.m. on December 31, 1996, Perez and Brandon Robinson (Robinson) were sitting in a pickup truck parked in front of an apartment building. Perez was in the driver's seat and Robinson in the passenger's seat. A San Diego police officer approached the truck and questioned them. They stated they did not live in the apartment building and denied using narcotics. The officer made a "sheriff's inquiry" and learned that Perez was subject to a Fourth Amendment waiver. Perez told the officer he had never been arrested. Perez and Robinson got out of the truck in compliance with the officer's request. The officer searched them and found on the ground next to the driver's door a folded $5 bill that enclosed two grams of cocaine. Both men were arrested by the officer.

On or about January 29, 1997, a felony complaint was filed charging Perez with possession of a controlled substance (Health & Saf. Code, § 11350, subd. (a)) and alleging he had a prior serious or violent felony conviction (§§ 1170.12, 667, subds. (b)-(i)).

On February 4 Perez pleaded not guilty to the charge and denied the prior conviction allegation.

On March 28 the trial court informed Perez it would not accept a request for diversion under section 1000 as that section existed on the date of his alleged offense, but it would accept a guilty plea conditioned on deferred entry of judgment under the 1997 amended version of section 1000. Perez pleaded guilty to the charged offense. The trial court struck the prior conviction allegation because the conviction apparently was not suffered by Perez.

On June 16 the trial court denied Perez's renewed request for diversion under the 1996 version of section 1000. The trial court granted Perez's

request for deferred entry of judgment under the 1997 version of section 1000 and suspended further criminal proceedings.

Perez timely filed a notice of appeal, and the trial court issued a certificate of probable cause.

DISCUSSION

I

*Comparison of 1996 Section 1000 Diversion With 1997 Section 1000 Deferred Entry of Judgment*

Through December 31, 1996, section 1000 provided for pretrial diversion in certain drug cases, including those charged under Health and Safety Code section 11350, without the requirement the defendant plead guilty to the charged offense.[3] The 1996 version of section 1000, subdivision (a) set forth the eligibility criteria for diversion, and the 1996 version of section 1000, subdivision (b) provided that after the filing of initial charges the district attorney must determine whether a defendant has met those criteria. The 1996 version of section 1000.1, subdivision (a) provided that the district attorney must advise the defendant of that eligibility determination. Subdivision (b) of that section provided: "If the defendant consents and waives his or her right to a speedy trial, the court may refer the case to the probation department or the court may summarily grant diversion. When directed by the court, the probation department shall make an investigation and . . . shall report its findings and recommendation to the court. The court shall make the final determination regarding education, treatment, or rehabilitation for the defendant."

The 1996 version of section 1000.2 provided: "The court shall hold a hearing and, after consideration of any information relevant to its decision, shall determine if the defendant consents to further proceedings under this chapter and waives his or her right to a speedy trial and if the defendant should be diverted and referred for education, treatment, or rehabilitation. . . . [¶] . . . [¶] The period during which the further criminal proceedings against the defendant may be diverted shall be for no less than six months nor longer than two years. Progress reports shall be filed by the probation department with the court as directed by the court."

---

[3]Section 1000 et seq. was amended effective January 1, 1997. (Stats. 1996, ch. 1132, § 2.) For convenience, we sometimes refer to the pre-1997 amendment version of section 1000 et seq. as "1996 section 1000" and to the 1997 amendment version of section 1000 et seq. as "1997 section 1000." The 1996 section 1000 was enacted by Statutes 1994, First Extraordinary Session 1993-1994, chapter 44, section 1.

The 1996 version of section 1000.3 provided that if a defendant's performance was found to be unsatisfactory during the diversion period, "the criminal case shall be referred back to the court for resumption of the criminal proceedings." If, however, the defendant satisfactorily performed during the diversion period, "the criminal charges shall be dismissed" at the end of the period. (1996 § 1000.3.) The 1996 version of section 1000.5 provided in part: "Upon successful completion of a diversion program, the arrest upon which the diversion was based shall be deemed to have never occurred. The [defendant] may indicate in response to any question concerning his or her prior criminal record that he or she was not arrested or diverted for the offense, except as specified in subdivision (b)."

Effective January 1, 1997, section 1000 et seq. was amended to change the statutory program from pretrial diversion without a guilty plea requirement to deferred entry of judgment conditioned on a defendant's guilty plea. The 1997 version of section 1000, subdivision (a) provides for deferred entry of judgment in certain drug cases, including those under Health and Safety Code section 11350, if a defendant meets certain eligibility criteria. Subdivision (b) of section 1000 provides that after charges are filed the prosecuting attorney must determine whether a defendant meets the eligibility criteria. According to 1997 section 1000.1, subdivision (a), the prosecuting attorney must advise the defendant of that eligibility determination and the procedures for deferred entry of judgment. Subdivision (b) of that section states: "If the defendant consents and waives his or her right to a speedy trial or a speedy preliminary hearing, the court may refer the case to the probation department or the court may summarily grant deferred entry of judgment if the defendant pleads guilty to the charge or charges and waives time for the pronouncement of judgment. When directed by the court, the probation department shall make an investigation and . . . report its findings and recommendations to the court. The court shall make the final determination regarding education, treatment, or rehabilitation for the defendant. If the court determines that it is appropriate, the court shall grant deferred entry of judgment if the defendant pleads guilty to the charge or charges and waives time for the pronouncement of judgment."

The 1997 version of section 1000.2 provides: "The court shall hold a hearing and, after consideration of any information relevant to its decision, shall determine if the defendant consents to further proceedings under this chapter and if the defendant should be granted deferred entry of judgment. . . . [¶] . . . [¶] The period during which deferred entry of judgment is granted shall be for no less than 18 months nor longer than three years. Progress reports shall be filed by the probation department with the court as directed by the court."

If a court finds that a defendant has performed unsatisfactorily in the program during the deferred entry of judgment period, "the court shall render a finding of guilt to the charge or charges pled, enter judgment, and schedule a sentencing hearing as otherwise provided in this code." (1997 § 1000.3.) If, however, a defendant performs satisfactorily during the deferral period, "the criminal charge or charges shall be dismissed." (1997 § 1000.3.) The 1997 version of section 1000.4 provides: "Upon successful completion of a deferred entry of judgment program, the arrest upon which the judgment was deferred shall be deemed to have never occurred. The defendant may indicate in response to any question concerning his or her prior criminal record that he or she was not arrested or granted deferred entry of judgment for the offense, except as specified in subdivision (b)."

## II

### *General Principles for Interpretation of Whether a Statute Is Prospective or Retrospective*

The initial issue we consider is whether application of the 1997 section 1000 to pre-1997 offenses is a retrospective application of the statute or merely the imposition of a procedural remedy in effect at the time of imposition. (See *People* v. *Acosta* (1996) 48 Cal.App.4th 411, 418 [55 Cal.Rptr.2d 675].) If application of 1997 section 1000 in this case is a retrospective application of the statute, we must consider whether the Legislature intended retrospective application of the statute or whether it intended the statute to apply prospectively only to post-1996 offenses.

In *Aetna Cas. & Surety Co.* v. *Ind. Acc. Com.* (1947) 30 Cal.2d 388, 391 [182 P.2d 159] (*Aetna*), the court stated: " 'A retrospective law is one which affects rights, obligations, acts, transactions and conditions which are performed or exist prior to the adoption of the statute.' [Citations.]" (*Ibid.,* quoting *American States W.S. Co.* v. *Johnson* (1939) 31 Cal.App.2d 606, 613 [88 P.2d 770].) Statutes are retrospective if they otherwise change "the legal effects of past events" or "impose[] a new or additional liability and substantially affect[] existing rights and obligations" (*Aetna, supra,* at pp. 394-395) or if they "*change[] the legal consequences of past conduct* by imposing new or different liabilities based upon such conduct. [Citation.]" (*Tapia* v. *Superior Court* (1991) 53 Cal.3d 282, 291 [279 Cal.Rptr. 592, 807 P.2d 434], italics added.)

Under 1996 section 1000 an eligible defendant could receive diversion for a period of six months to two years without pleading guilty to the charged offense. Under 1997 section 1000 an eligible defendant may receive

deferred entry of judgment for a period of eighteen months to three years only if the defendant pleads guilty to the charged offense. Therefore, 1997 section 1000 increases the minimum period of diversion or deferred entry of judgment over that provided in 1996 section 1000 from six months to eighteen months and the maximum period from two years to three years. In 1997 section 1000 a requirement is added that is not contained in 1996 section 1000: the defendant must plead guilty to the charged offense as a condition to receiving deferred entry of judgment. The adverse legal consequences an eligible defendant would suffer under 1997 section 1000 are significantly increased over the consequences the defendant would suffer under 1996 section 1000. We conclude that application of 1997 section 1000 to conduct committed before January 1, 1997, retrospectively applies its provisions because it changes the legal consequences of past conduct by imposing liabilities different from the liabilities extant at the time of the past conduct. (*Tapia* v. *Superior Court, supra,* 53 Cal.3d at pp. 289-291, 298-299.)

III

*As a Matter of Statutory Interpretation, We Conclude That*
*1997 Section 1000 Applies Prospectively to Conduct Committed*
*on or After January 1, 1997*

The parties do not cite, and we are unaware of, any case that has decided the question of whether the 1997 amendments to section 1000 et seq. apply only to post-1996 offenses and not retrospectively. We therefore address this question as one of first impression, and we review the issue of statutory interpretation de novo as a question of law. (*People* v. *Taylor* (1992) 6 Cal.App.4th 1084, 1090-1091 [8 Cal.Rptr.2d 439]; 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 317, p. 355.) We conclude the 1997 amendments to section 1000 et seq. operate prospectively and apply to offenses committed only on or after January 1, 1997.

■ First, statutes "are presumed to operate prospectively, and . . . they should be so interpreted 'unless express language or clear and unavoidable implication negatives the presumption.' [Citation.]" (*Evangelatos* v. *Superior Court* (1988) 44 Cal.3d 1188, 1208 [246 Cal.Rptr. 629, 753 P.2d 585]; *Tapia* v. *Superior Court, supra,* 53 Cal.3d at p. 287.) Section 3 codifies this presumption: "No part of [the Penal Code] is retroactive, unless expressly so declared." In *Aetna, supra,* 30 Cal.2d at page 393, the court stated: "It is an established canon of interpretation that statutes are not to be given a retrospective operation unless it is clearly made to appear that such was the legislative intent." ■ The 1997 amendments to section 1000 et seq.

contain no express language that the Legislature intended those amendments to apply retrospectively to conduct committed before January 1, 1997. (§ 3; *Evangelatos* v. *Superior Court, supra,* 44 Cal.3d at p. 1208.)

■ Second, it is a general principle of statutory construction that a statute is to be construed to sustain its validity and in a manner not in violation of a constitutional provision, including the constitutional prohibition against ex post facto laws. (*Clare* v. *State Bd. of Accountancy* (1992) 10 Cal.App.4th 294, 303 [12 Cal.Rptr.2d 481]; *In re Kay* (1970) 1 Cal.3d 930, 942 [83 Cal.Rptr. 686, 464 P.2d 142]; *Welton* v. *City of Los Angeles* (1976) 18 Cal.3d 497, 505 [134 Cal.Rptr. 668, 556 P.2d 1119]; 7 Witkin, Summary of Cal. Law (9th ed. 1988) Constitutional Law, § 95, pp. 148-149.) ■ Application of 1997 section 1000 to conduct committed before January 1, 1997, arguably violates the constitutional prohibition against ex post facto laws. The *Tapia* court stated: "Certainly *a law is retrospective if it* defines past conduct as a crime, increases the punishment for such conduct, or eliminates a defense to a criminal charge based on such conduct. Such a law, as applied to a past crime, '*change[s] the legal consequences of an act completed before [the law's] effective date,*' namely the defendant's criminal behavior. [Citations.] Application of such a law to past crimes would also violate the constitutional rule against ex post facto legislation. (U.S. Const., art. I, § 10, cl. 1; Cal. Const., art. I, § 9.)" (*Tapia* v. *Superior Court, supra,* 53 Cal.3d at p. 288, italics added.) Although "[e]very *ex post facto* law must necessarily be retrospective[,] . . . every retrospective law is not an *ex post facto* law." (*Calder* v. *Bull* (1798) 3 U.S. (3 Dall.) 386, 391 [1 L.Ed. 648, 650], original italics.)

Extensive case law discusses the constitutional prohibition against ex post facto laws. ■ In *Tapia,* the California Supreme Court noted that the United States Supreme Court has simplified the test for ex post facto laws: "In [*Collins* v. *Youngblood* (1990) 497 U.S. 37 [110 S.Ct. 2715, 111 L.Ed.2d 30] (*Collins*)], the high court endorsed its earlier formulation of the law in *Calder* v. *Bull* (1798) 3 U.S. (3 Dall.) 386, 390 [1 L.Ed. 648, 650] (*Calder*), and *Beazell* v. *Ohio* (1925) 269 U.S. 167, 169-170 [70 L.Ed. 216, 217-218, 46 S.Ct. 68] (*Beazell*), as 'faithful to our best knowledge of the original understanding' of the ex post facto clause. (*Collins, supra,* [497 U.S. at p. 42] [111 L.Ed.2d at p. 39, 110 S.Ct. at p. 2719].) Under that exclusive formulation, ' "any statute [1] which punishes as a crime an act previously committed, which was innocent when done; [2] which makes more burdensome the punishment for a crime, after its commission, or [3] which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as *ex post facto.*" ' (*Collins, supra,* [497 U.S. at p. 42] [111 L.Ed.2d at p. 39, 110 S.Ct. at p. 2719], original italics], quoting *Beazell, supra,* 269 U.S. at pp. 169-170 [70 L.Ed. at p.

217].)" (*Tapia* v. *Superior Court, supra,* 53 Cal.3d at pp. 293-294, fn. omitted.)[4] *Tapia* held that California's ex post facto prohibition is interpreted in the same manner as the federal ex post facto prohibition. (*Id.* at pp. 295-297.)

■ Cases involving probation are analogous to cases involving diversion and deferred entry of judgment, because diversion and deferred entry of judgment under section 1000 are similar in effect and purpose to probation. (*People* v. *Superior Court* (*On Tai Ho*) (1974) 11 Cal.3d 59, 66 [113 Cal.Rptr. 21, 520 P.2d 405] ["diversion may also be viewed as a specialized form of probation, available to a different class of defendants but sharing many similarities with general probation"].)[5]

Although one purpose of probation may be rehabilitation of the defendant, the "modern view" is that a grant of probation is "an alternative form of punishment." (*People* v. *Edwards* (1976) 18 Cal.3d 796, 801 [135 Cal.Rptr. 411, 557 P.2d 995].) Either diversion or deferred entry of judgment under section 1000, therefore, may be deemed to be an alternative form of punishment, although one purpose of diversion or deferred entry of judgment may be rehabilitation of the defendant.

Retrospective application of new or amended probation statutes that adversely affect defendants has been held to violate the prohibition against ex post facto laws. In *People* v. *Martinez* (1988) 197 Cal.App.3d 767, 775-778 [243 Cal.Rptr. 66], the court held that it was a violation of the prohibition

---

[4]*Tapia* noted that *Collins* v. *Youngblood* (1990) 497 U.S. 37 [110 S.Ct. 2715, 111 L.Ed.2d 30] repudiated ex post facto analysis formerly holding that "a law violated the constitutional prohibition against ex post facto legislation if it eliminated a 'substantial protection,' whether substantive or procedural, existing at the time of the offense." (*Tapia* v. *Superior Court, supra,* 53 Cal.3d at p. 292.)

[5]Both probation and section 1000 diversion/deferred entry of judgment are alternatives to imprisonment of defendants who personally, or whose offenses, are deemed worthy of more lenient treatment. Both probation and section 1000 diversion/deferred entry of judgment generally allow defendants to avoid, for most purposes, the stigma and adverse consequences of a criminal conviction. A trial court generally must allow a probationer who successfully fulfills all conditions of probation to withdraw a guilty plea, or it must set aside a guilty verdict and then generally dismiss the charges against the defendant. (§ 1203.4.) Except for certain purposes, the defendant is thereafter "released from all penalties and disabilities resulting from the offense," although "in any subsequent prosecution of the defendant for any other offense, the prior conviction may be pleaded and proved and shall have the same effect as if probation had not been granted or the [charges] dismissed." (§ 1203.4, subd. (a).)

The result of successful completion by a defendant of a section 1000 diversion or deferred entry of judgment program is similar to the result of successful completion of a probation term, because the criminal charges are dismissed by the trial court on successful completion of the diversion or deferral program period and the arrest generally is deemed never to have occurred. (1996 §§ 1000.3, 1000.5; 1997 §§ 1000.3, 1000.4; *People* v. *Superior Court* (*On Tai Ho*), *supra,* 11 Cal.3d at p. 67.)

against ex post facto laws to apply newly enacted section 1203.066 to make a defendant statutorily ineligible for probation although his offenses were committed before the effective date of the statute.[6] In *People* v. *Williams* (1988) 200 Cal.App.3d Supp. 1, 4-6 [246 Cal.Rptr. 464], the court held that the application of newly amended Vehicle Code section 23206 to impose a maximum probation term of five years, rather than the former statutory maximum term of three years, violated the prohibition against ex post facto laws.[7] Under *Edwards*, probation is viewed as a form of punishment. (*People* v. *Edwards, supra,* 18 Cal.3d at p. 801.) Under *Martinez* and *Williams,* new or amended statutes providing for ineligibility for probation and increased maximum probation terms are viewed as increased burdens of punishment and violative of the prohibition against ex post facto laws when applied to past conduct.

By analogy to probation cases, application of the 1997 amendments to section 1000 to pre-1997 conduct can be viewed as making a defendant's punishment more burdensome than the applicable punishment at the time of commission of the alleged conduct. (*Tapia* v. *Superior Court, supra,* 53 Cal.3d at pp. 294, 298.) ▮▮▮▬▬ Therefore, application of 1997 section 1000 to conduct committed before January 1, 1997, arguably is a prohibited application of an ex post facto law.[8] To avoid application of a

---

[6]*Martinez,* decided before *Collins* or *Tapia,* therefore applied the former, now superseded, test for ex post facto laws. *Martinez* reasoned: "Because section 1203.066 renders statutorily ineligible for probation a class of offenders who were not necessarily ineligible prior to its enactment, it is clear such offenders are *disadvantaged* by the statute and, when applied to crimes occurring before its effective date, section 1203.066 violates the proscription against ex post facto laws." (*People* v. *Martinez, supra,* 197 Cal.App.3d at p. 777, italics added.) Although the court used the test of "disadvantage" to a defendant to find a violation of ex post facto prohibitions, it is unclear whether the court would have reached a different result under the current *Collins* and *Tapia* approach for ex post facto laws. Nevertheless, even if *Martinez* might not have involved an ex post facto law under current standards, the court probably would have found that section 1203.066 must be applied prospectively because the "legal consequences" of the defendant's past conduct were adversely changed by its enactment.

[7]*Williams,* also decided before *Collins* and *Tapia,* applied the former, now superseded, test for ex post facto laws. *Williams* reasoned that the defendant's "substantial personal rights" were adversely affected by the retrospective application of the statutory extension of the maximum period of probation and therefore violated the prohibition against ex post facto laws. (*People* v. *Williams, supra,* 200 Cal.App.3d at pp. Supp. 4-5.) Although the court used the "substantial personal rights" test for finding a violation of the prohibition against ex post facto laws, it is unclear whether the court would have reached a different result under the current *Collins* and *Tapia* analysis of ex post facto laws. Nevertheless, even if *Williams* might not have involved an ex post facto law under current standards, the court probably would have found that the amended statute must be applied prospectively because it adversely affected the legal consequences of the defendant's past conduct.

[8]We perceive no apparent legitimate, nonpunitive governmental purpose in the provisions of 1997 section 1000 that would save it from otherwise being classified as an ex post facto law if applied to pre-1997 conduct. (*People* v. *McVickers* (1992) 4 Cal.4th 81, 89 [13

possibly ex post facto law we interpret 1997 section 1000 as inapplicable to pre-1997 conduct.

■ Third, a general principle of statutory construction is that a penal statute must be construed in a manner most favorable to a defendant. (*People v. Fenton* (1993) 20 Cal.App.4th 965, 968 [25 Cal.Rptr.2d 52]; *People v. Boyd* (1979) 24 Cal.3d 285, 295 [155 Cal.Rptr. 367, 594 P.2d 484].) ■ Therefore, to the extent there is uncertainty whether the Legislature intended 1997 section 1000 to apply retrospectively to pre-1997 conduct, the most favorable construction of that section to defendants would be to apply it only to conduct committed on or after January 1, 1997.

IV

*The Trial Court Erred by Applying 1997 Section 1000 to This Case*

We hold that as a matter of statutory interpretation 1997 section 1000 operates prospectively only and therefore the diversion provisions of 1996 section 1000 apply to Perez's conduct on December 31, 1996. The trial court erred by requiring Perez to plead guilty to the charged offense and by following procedures for deferred entry of judgment under 1997 section 1000 rather than diversion under 1996 section 1000.[9]

DISPOSITION

The order is reversed and the matter remanded with directions that the court grant a request by the defendant to withdraw his guilty plea and, should the court find the defendant eligible, issue an order granting the defendant diversion under the 1996 version of section 1000 et seq. for the period the court deems appropriate.

McIntyre, J., concurred.

---

Cal.Rptr.2d 850, 840 P.2d 955]; *Pro-Family Advocates* v. *Gomez* (1996) 46 Cal.App.4th 1674, 1684 [54 Cal.Rptr.2d 600].) A goal of rehabilitation of a defendant is not a legitimate, nonpunitive governmental purpose that prevents a penal statute from violating constitutional ex post facto prohibitions.

[9]Perez sufficiently objected below to application of 1997 section 1000, and his objection was not restricted to the requirement that he plead guilty. Also, retrospective and ex post facto applications of statutes are measured as of the date of past conduct, *not* as of the filing date of the information or complaint charging the defendant with crimes.

**KREMER, P. J.,** Concurring.—I concur in the result. However, I write separately because the majority's excursion into constitutional analysis is both unnecessary and contrary to applicable precedent.

This case can be resolved by applying the well-established principle that statutes are presumed to operate prospectively absent an express legislative declaration to the contrary. The majority opinion does so at page 353 and I agree. That should be the end of the matter. However, the majority go farther by concluding retroactive application of amended Penal Code[1] section 1000 et seq. here would violate the constitutional prohibition against ex post facto laws by increasing Perez's punishment. Specifically, citing *People* v. *Superior Court* (*On Tai Ho*) (1974) 11 Cal.3d 59 [113 Cal.Rptr. 21, 520 P.2d 405], the majority view diversion as a specialized form of "an alternative form of punishment," to wit, probation.

The majority's reliance on *People* v. *Superior Court* (*On Tai Ho*), *supra*, 11 Cal.3d 59, is misplaced. Although containing language referring to diversion as a specialized form of probation, which itself is an alternative form of punishment, *On Tai Ho* did not address the issue of the distinction between punishment and rehabilitation. Instead, *On Tai Ho* involved the question whether diversion was a judicial function or a matter within prosecutorial charging discretion. In that context, the Supreme Court determined diversion to be a judicial function based in part on the theory that both diversion and probation were programs authorized and supervised by the court.

Further, the majority's analogizing probation to section 1000 diversion is inapt. Probation has attendant punitive conditions such as imposition of custody, community service and required waiver of rights. However, unlike probation, section 1000 diversion has no such attendant punitive elements. Instead, section 1000 diversion constitutes a method to avoid the criminal process entirely by meeting the specified conditions of successfully completing a nonprobation department drug rehabilitation program and staying clean for the designated period. Upon satisfying those conditions, a diverted person literally has the slate wiped clean, a situation unlike the partial relief granted to a successful probationer under section 1203.4.

In sum, while perhaps "disadvantaging" Perez, the new preconditions to diversion in amended section 1000 et seq. did not rise to the level of a violation of the constitutional prohibition against ex post facto laws under

---

[1] All statutory references are to the Penal Code.

the analytical tests of *Tapia* v. *Superior Court* (1991) 53 Cal.3d 282 [279 Cal.Rptr. 592, 807 P.2d 434]. Hence, had it chosen to do so, the Legislature could have changed those statutory requirements retroactively without running afoul of the ex post facto clause.

A petition for a rehearing was denied December 22, 1998.