BILL LOCKYER Attorney General GREGORY L. GONOT Deputy Attorney General
THE HONORABLE JACKIE SPEIER, MEMBER OF THE CALIFORNIA SENATE, has requested an opinion on the following question:
Does a city have a contractual obligation to provide paid health benefits to two former city council members who have served more than five years and more than twelve years respectively, where each was a member of the council in 1994 when the council adopted a resolution providing paid health benefits to former council members who serve at least five consecutive years, with the benefits continuing up to twelve years based upon the number of years served?
 CONCLUSION
A city has a contractual obligation to provide paid health benefits to a former city council member who has served more than twelve years, but not to one who has served less than twelve years, where each was a member of the council in 1994 when the council adopted a resolution providing paid health benefits to former council members who serve at least five consecutive years, with benefits continuing up to twelve years based upon the number of years served.
 ANALYSIS
We are informed that in 1994, the city council of a general law city adopted a resolution providing paid health benefits for current council members and those council members who, upon leaving office, had at least five consecutive years of service on the council. The resolution limited the duration of paid health benefits for the former members to one year of benefits for each year served on the council, up to a maximum of twelve years. We are asked whether the city has a contractual obligation to provide paid health benefits for two former council members where each was a council member at the time the resolution was passed and the total length of service was more than five years for one and more than twelve years for the other. We conclude that only the one with twelve years of service is eligible for the benefits.
The Legislature has enacted a comprehensive statutory scheme (Gov. Code, §§ 53200-53210)[1] dealing with the granting of health benefits to the officers and employees of cities as well as other local agencies. (80 Ops.Cal.Atty.Gen 119, 121 (1997); see also Cal. Code Regs., tit. 2, § 2:18702.4, subd. (a)(3); 77 Ops.Cal.Atty.Gen. 50, 52 (1994); 76 Ops.Cal.Atty.Gen. 91, 94 (1993).) Section 53201 is the key statute requiring our interpretation, and it provides:
 "(a) The legislative body of a local agency, subject to conditions as may be established by it, may provide for any health and welfare benefits for the benefit of its officers, employees, retired employees, and retired members of the legislative body, as provided in subdivision (b), who elect to accept the benefits and who authorize the local agency to deduct the premiums, dues, or other charges from their compensation, to the extent that the charges are not covered by payments from funds under the jurisdiction of the local agency as permitted by section 53205.
 "(b) The legislative body of a local agency may also provide for the continuation of any health and welfare benefits for the benefit of former elective members of the legislative body who (1) served in office after January 1, 1981, and whose total service at the time of termination is not less than 12 years, or (2) have completed one or more terms of office, but less than 12 years, and who agree to and do pay the full costs of the health and welfare benefits.
 "(c)(1) Notwithstanding any other provisions of law, a legislative body of a local agency that provided benefits pursuant to subdivision (b) to former elective members of the legislative body January 1, 1995, shall not provide those benefits to any person first elected to a term of office that begins on or after January 1, 1995, unless the recipient participates on a self-pay basis, as provided in subdivision (b).
 "(2) A legislative body of a local agency that did not provide benefits pursuant to subdivision (b) to former elective members of the legislative body before January 1, 1994, shall not provide those benefits to former elective members of the legislative body after January 1, 1994, unless the recipients participate on a self-pay basis.
 "(3) A legislative body of a local agency that provided benefits pursuant to subdivision (b) to former elective members of the legislative body before January 1, 1994, may continue to provide those benefits to those members who received those benefits before January 1, 1994.
 ". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."
Section 53205, in turn, states:
 "From funds under its jurisdiction, the legislative body may authorize payment of all, or such portion as it may elect, of premiums, dues, or other charges for health and welfare benefits of officers, employees, retired employees, former elective members specified in subdivision (b) of Section 53201, and retired members of the legislative body subject to its jurisdiction."
Section 53201 was enacted in 1949 (Stats. 1949, ch. 81, § 1), initially allowing current officers and employees the opportunity to purchase their own group insurance. In 1957 (Stats. 1957, ch. 944, § 2), the Legislature authorized local agencies to pay for the insurance if they so chose, and expanded the coverage to health and welfare benefits generally. In 1963, "retired employees" (Stats. 1963, ch. 1773, § 1) were added to the coverage, and "retired members of the legislative body" were added in 1979 (Stats. 1979, ch. 415, § 1).
In a 1979 opinion (79 Ops.Cal.Atty.Gen. 631 (1979)), we interpreted the phrase "retired members of the legislative body" to mean only those officers who were part of a pension plan of the local agency. In apparent response to our opinion, the Legislature amended section 53201
(Stats. 1980, ch. 129, § 1) by adding subdivision (b) to cover "former elective members of the legislative body . . . whose total service . . . exceeds 12 years." In 1985 (Stats. 1985, ch. 141, § 1), former elective members serving less than 12 years were included — if they paid the premiums themselves.
The last relevant change occurred in 1994 (Stats. 1994, ch. 615, § 1), when subdivision (c) was added essentially in its present form. The 1994 amendment became operative on January 1, 1995. (Cal. Const., art. IV, § 8, subd. (c)(1); see People v. Camba (1996) 50 Cal.App.4th 857,862, 865-866.) Subdivision (c) thus was not applicable when the city council in question first granted paid health benefits to former elective members in 1994. Nevertheless, subdivision (c)(2) prohibits grants of benefits during 1994 "unless the recipients participate on a self-pay basis."[2] Accordingly, what the city council did in 1994 was prohibited by subdivision (c)(2) operative January 1, 1995.
Normally, a statute operates prospectively rather than retroactively. Statutes "are presumed to operate prospectively, and . . . they should be so interpreted `unless express language or clear and unavoidable implication negatives the presumption.' [Citation.]" (Evangelatos v. Superior Court (1988) 44 Cal.3d 1188, 1208; accord, People v. Grant (1999) 20 Cal.4th 150, 156-157.) Here, due to its express language, subdivision (c)(2) of section 53201 must be interpreted as being retroactive in applying to grants of benefits during 1994. (See Bank of America v. Angel View Crippled Children's Foundation (1999)72 Cal.App.4th 451, 457; People v. Perez (1998) 68 Cal.App.4th 346, 352.) A statute will be applied retroactively, as intended by the Legislature, "unless due process considerations prevent" such application. (Western Security Bank v. Superior Court (1997) 15 Cal.4th 232, 243.)
In In re the Marriage of Bouquet (1976) 16 Cal.3d 583, 592, the Supreme Court explained what "due process considerations" were to govern the possible application of a retroactive law:
 "In determining whether a retroactive law contravenes the due process clause, we consider such factors as the significance of the state interest served by the law, the importance of the retroactive application of the law to the effectuation of that interest, the extent of reliance upon the former law, the legitimacy of that reliance, the extent of actions taken on the basis of that reliance, and the extent to which the retroactive application of the new law would disrupt those actions. [Citations.]"
Considering these factors, we find that the language of what is now subdivision (c)(2) of section 53201 was part of the original proposed legislation, Senate Bill No. 1893, when it was introduced on February 25, 1994. Although the legislation was later amended to add what is now subdivisions (c)(1) and (c)(3), allowing prospective applications as specified, the retroactive features of subdivision (c)(2) were never changed.[3] It is apparent from the committee reports that local agencies throughout the state were aware of the pending legislation. Taxpayer groups supported the legislative goal of reducing government spending, while local agencies urged the Legislature not to interfere with their budgetary decisions. (See, e.g., Assem. Com. on Local Government, Analysis of Sen. Bill No. 1893 (1993-1994 Reg. Sess.) as amended June 13, 1994.) The legislative act was approved by the Governor on September 16, 1994. With respect to the city council in question, we find that its reliance on the former law may be considered "legitimate," since its adoption of the paid benefit plan for current and former members occurred on February 14, 1994, prior to the introduction of Senate Bill No. 1893.
Moreover, in this case, applying subdivision (c)(2) of section53201 retroactively would violate the contract clause of the federal and state Constitutions[4] as determined by a recent decision of the Court of Appeal. In Thorning v. Hollister School Dist. (1992)11 Cal.App.4th 1598, the court ruled that furnishing health benefits to former elective members under the terms of section 53201 could not be unilaterally terminated without violating the Constitution. (Id., at p. 1610.) The court explained:
 "The question whether District could discontinue the benefits is an issue of first impression. The only published authority is a 1984 opinion of the California Attorney General, which focuses on subdivision (b) of section 53201. The opinion concludes: `A school district presently providing health and life insurance benefits to present and eligible former board members may not, in the absence of constitutional justification, discontinue such benefits (a) during the current terms of board members or (b) as to former board members who had already qualified for lifetime benefits, but may discontinue such benefits (c) upon the commencement of new terms of current board members or (d) as to future new board members.' (67 Ops.Cal.Atty.Gen. 510 (1984).) Although an official interpretation of a statute by the Attorney General is not controlling, it is entitled to great respect. [Citation.]" (Id., at pp. 1603-1604, fn. omitted.)
The court agreed with our 1984 opinion, stating in part:
 "In California League [of City Employees Association v. Palos Verdes Library Dist. (1978) 87 Cal.App.3d 135], the court determined that the three benefits in question, a longevity salary increase, extra vacation after ten years of continuous service, and a paid sabbatical after each six years of full-time service, were fundamental benefits [citation] and `maturing emoluments for continued service' [citation].
 "`[I]n determining whether they are fundamental the court is to evaluate "the effect of it in human terms and the importance of it to the individual in the life situation." [Citation.]' The court found it significant that the three benefits were included in the district's official declaration of policy pertaining to employment, that they `were important to the employees, had been inducement to remain employed with the district, and were a form of compensation which had been earned by remaining in employment.' [Citation.]
 "The benefits involved in the instant case share these qualities. They were included in District's official declaration of policy pertaining to remuneration and other benefits for board members. They were of importance to the board members as an inducement for their continued service on the board and as a factor in their decision to retire. Thus, under the criteria of California League, the benefits are fundamental and District may not unilaterally terminate them. [Citation.]" (Id., at pp. 1606-1607.)
In light of the Thorning holding, we find that the city in question has a contractual obligation to provide paid health benefits to the city council member with 12 years of service.[5]
What, then, is the effect of the city council's resolution specifying that a council member need only have served for five years in order to be eligible for paid health benefits? This provision directly conflicts with the Legislature's grant of authority contained in section 53201, subdivision (b). A city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general law. (Cal. Const., art. XI, § 7.) Where local legislation conflicts with general law, it is void. (Cohen v. Board of Supervisors (1985) 40 Cal.3d 277, 290; A B Cattle Co. v. City of Escondido (1987) 192 Cal.App.3d 1032, 1038; 81 Ops.Cal.Atty.Gen. 218, 222 (1998); 78 Ops.Cal.Atty.Gen. 22, 23 (1995).)
In summary, we find that the city's resolution requiring only five years of prior service for former council members is void and cannot be implemented. By substituting the 12-year requirement of section53201, we may preserve the validity of the resolution so as to make it applicable to the former council member with 12 years of service. (See First Presbyterian Church of Berkeley v. City of Berkeley (1992)59 Cal.App.4th 1241, 1253, fn. 7; Harder v. Denton (1935) 9 Cal.App.2d 607,611-612.)
We conclude that a city has a contractual obligation to provide paid health benefits to a former city council member who has served more than twelve years, but not to one who has served less than 12 years, where each was a member of the council in 1994 when the council adopted a resolution providing paid health benefits to former council members who serve at least five consecutive years, with benefits continuing up to twelve years based upon the number of years served.
[1] All references hereafter to the Government Code are by section number only.
[2] While subdivision (c)(1) of section 53201 also requires a "self-pay basis," it only applies to those "first elected to a term of office that begins on and after January 1, 1995," and hence would be inapplicable to the city council members in question. Subdivision (c)(3) would likewise be inapplicable here because the city council did not provide "benefits before January 1, 1994."
[3] A letter from the author of Senate Bill No. 1893 was published in the Senate Daily Journal (Sen. J. (1993-1994 Reg. Sess.) p. 6925) declaring "that Senate Bill 1893 is intended to apply prospectively and not to deprive locally elected office holders in office prior to January 1, 1995, of agency paid health and welfare benefits upon retirement," specifically referencing the language of subdivision (c)(1).
[4] "No state shall . . . pass any . . . law impairing the obligation of contracts. . . ." (U.S. Const., art. I, § 10, cl. 1.) "A . . . law impairing the obligation of contracts may not be passed." (Cal. Const., art. I, § 9.)
[5] While the impairment of a contract is not always constitutionally prohibited (see Olson v. Cory (1980) 27 Cal.3d 532, 539; Valdes v. Cory (1983) 139 Cal.App.3d 773, 790-791), we have been given no facts upon which to find such an exception here, as in Thorning.