91 Cal.Rptr.2d 834 (2000)
77 Cal.App.4th 663
The PEOPLE, Plaintiff and Appellant,
v.
Mehrwan Jehangir SHROFF, Defendant and Respondent.
The People, Plaintiff and Appellant,
v.
Scott Alan Murrain, Defendant and Respondent.
Nos. D032479, D032495.
Court of Appeal, Fourth District, Division One.
January 14, 2000.
Review Granted April 12, 2000.
*836 Paul J. Pfingst, District Attorney; Thomas F. McArdle and James E. Atkins, Deputy District Attorneys, for Plaintiff and Appellant.
Koryn & Koryn, Sylvia Koryn and Daniel G. Koryn, under appointments by the Court of Appeal, Oxnard, for Defendant and Respondent Mehrwan Shroff.
Carl M. Hancock, under appointment by the Court of Appeal, Chula Vista, for Defendant *837 and Respondent, Scott Alan Murrain.
*835 HALLER, J.
The People appeal from orders granting Mehrwan Jehangir Shroff and Scott Alan Murrain relief under Penal Code[1] section 1203.4, subdivision (a), which (1) allowed Shroff and Murrainfollowing fulfillment of their probationary termsto withdraw their guilty pleas and enter not guilty pleas, (2) expunged the proceedings from the record and (3) dismissed the accusations against them.
At issue is 1997 legislation that added to the list of crimes not subject to section 1203.4 relief certain sex offenses, including those to which Schroff and Murrain had pled. (Stats.1997, ch. 61, § 1, p. 293 (Assem. Bill No. 729).) The People contend the amendment to section 1203.4 precludes expungement of Shroff's and Murrain's convictions even though each of them committed his crime prior to the effective date of the amendment. We agree.

FACTUAL AND PROCEDURAL BACKGROUND
On July 8, 1991, pursuant to a plea bargain, Shroff pled guilty to lewd acts with a minor (§ 288, subd. (a)) involving a developmentally delayed eight-year-old neighbor. Under the terms of the plea bargain, the People and the court agreed to local time as a condition to probation and the court dismissed the remaining counts on motion of the People. On September 5, 1991, the trial court suspended imposition of sentence and granted Shroff probation for a term of five years under certain terms and conditions. In 1996, Shroff successfully completed probation.
On September 16, 1998, Shroff filed a petition for relief under section 1203.4. On November 9, 1998, the trial court granted Shroff's petition, over objection by the People.
Shroff, a citizen of Pakistan, has been a legal resident of the United States since 1988.
On August 2, 1990, pursuant to a plea bargain, Murrain pled guilty to continuous sexual abuse of a minor (§ 288.5, subd. (a)) in relation to various sex acts he performed on his stepdaughter when she was nine and ten years old. Under the terms of the plea bargain, the People agreed to local time as a condition of probation and the court dismissed the remaining counts of the complaint on the motion of the People. On October 11, 1990, the trial court suspended imposition of sentence and granted Murrain probation for a term of seven years. Murrain's probation ended on October 1, 1997.
On October 22, 1998, Murrain moved to withdraw his guilty plea and dismiss the previous charges pursuant to section 1203.4. On November 12, 1998, the trial court granted Murrain's motion over objection by the People.

DISCUSSION
Under section 1203.4, a convicted defendant "may be reinstated as a law-abiding member of society" if he or she complies with the requirements of his or her probation and he or she is not currently serving a sentence or on probation for any other offense or charged with the commission of any other offense. (People v. Chandler (1988) 203 Cal.App.3d 782, 788, 250 Cal.Rptr. 730; see also People v. Johnson (1955) 134 Cal.App.2d 140, 143, 285 P.2d 74 [statute holds out "[r]emoval of the blemish of a criminal record"].)
Section 1203.4, subdivision (a) reads in pertinent part:
"In any case in which a defendant has fulfilled the conditions of probation for the entire period of probation, or has been discharged prior to the termination of the period of probation ... the defendant shall, at any time after the termination of the period of probation, ... be *838 permitted by the court to withdraw his or her plea of guilty ... and enter a plea of not guilty; ... and, ... the court shall thereupon dismiss the accusations or information against the defendant and except as noted below, he or she shall thereafter be released from all penalties and disabilities resulting from the offense of which he or she has been convicted....
".........................
"This subdivision shall apply to all applications for relief under this section which are filed on or after November 23, 1970."
Subdivision (b) of section 1203.4 provides:
"Subdivision (a) of this section does not apply to any misdemeanor which is within the provisions of subdivision (b) of Section 42001 of the Vehicle Code, to any violation of subdivision (c) of Section 286, Section 288, subdivision (c) of Section 288a, Section 288.5, or subdivision (j) of Section 289, or to any infraction." (Underscoring added.)
The above underscored language of section 1203.4, subdivision (b), was added by the Legislature in 1997 (Stats.1997, ch. 61 § 1, p. 293 (Assem. Bill No. 729) and became effective January 1, 1998.[2]
In determining whether the trial court erred in applying section 1203.4, subdivision (a), to Shroff and Murrain, we address the following questions and issues.

I. Is the 1997 Amendment Retroactive Legislation?

We begin our analysis by ascertaining the Legislature's intent in amending section 1203.4. In determining legislative intent, we look first to the words of the statute. (People v. Pieters (1991) 52 Cal.3d 894, 898, 276 Cal.Rptr. 918, 802 P.2d 420.) "When looking to the words of the statute, a court gives the language its usual, ordinary meaning." (People v. Snook (1997) 16 Cal.4th 1210, 1215, 69 Cal.Rptr.2d 615, 947 P.2d 808.) If the language is not ambiguous, a court presumes the Legislature meant what it said and the plain meaning of the statute governs. (People v. Coronado (1995) 12 Cal.4th 145, 151, 48 Cal.Rptr.2d 77, 906 P.2d 1232.)
The language of the amendment is clear: persons convicted of the listed sex crimes are not eligible to have their convictions expunged under section 1203.4. However, as to whether the Legislature intended the statute to be applied retroactively, the amendment is silent. Section 3 provides "[n]o part of [the Penal Code] is retroactive, unless expressly so declared." In the absence of a legislative declaration, we find the Legislature did not intend retroactive application, but rather prospective application.
While this finding is in accord with the position of Shroff and Murrain, it does not advance their cause. Shroff and Murrain argue the lack of retroactive intent renders the amendment inapplicable to them because their crimes were committed before the effective date of the amendment. However, this argument fails to recognize what is the critical event in the amended statuteit is not, as Shroff and Murrain presume, the date of their convictions, but rather the date of their petitions or motions for relief under section 1203.4.
Although section 1203.4 confers the benefit of expungement to a defendant who successfully fulfills the conditions of probation, the statute does not operate automatically; a defendant must petition the court for such expungement and show *839 the successful completion of probation as long as he or she is not then serving a sentence, on probation for any offense or charged with the commission of any offense. (See § 1203.4, subd. (a); People v. Ignazio (1955) 137 Cal.App.2d Supp. 881, 882, 290 P.2d 964; see also People v. Barnes (1966) 239 Cal.App.2d 705, 707, 49 Cal.Rptr. 77 [former § 1168].)
Thus, the legislative focus of the 1997 amendment was the date of application for section 1203.4 relief; it was not the date of the underlying conviction. In other words, we conclude the Legislature intended the restrictions of the 1997 amendment to apply to section 1203.4 relief petitions filed on or after January 1, 1998.
The fact that Shroff's and Murrain's convictions predate January 1, 1998, is simply not relevant. Nor does this fact render the 1997 amendment retroactive. "A statute is not retroactive in operation merely because it draws upon facts antecedent to its enactment for its operation." (People v. Venegas (1970) 10 Cal.App.3d 814, 823, 89 Cal.Rptr. 103.)
Our interpretation is in keeping with the presumption that statutes operate prospectively and the law's general disapproval of retroactive laws. (Tapia v. Superior Court (People) (1991) 53 Cal.3d 282, 279 Cal.Rptr. 592, 807 P.2d 434; People v. Durbin (1966) 64 Cal.2d 474, 50 Cal.Rptr. 657, 413 P.2d 433.) "`It is an established canon of interpretation that statutes are not to be given a retrospective operation unless it is clearly made to appear that such was the legislative intent.' [Citation.]" (Cole v. Fair Oaks Fire Protection Dist. (1987) 43 Cal.3d 148, 153, 233 Cal. Rptr. 308, 729 P.2d 743.)

II. Was the Amendment an Impermissible Ex Post Facto Law?[3]
The United States Constitution (art. I, §§9 & 10) and the California Constitution (art. I, § 9) prohibit the passage of ex post facto laws. The interpretation of the ex post facto clauses in the United States and California Constitutions is identical. (People v. McVickers (1992) 4 Cal.4th 81, 84, 13 Cal.Rptr.2d 850, 840 P.2d 955.)
Under Collins v. Youngblood (1990) 497 U.S. 37, 42, 110 S.Ct. 2715, 111 L.Ed.2d 30, (Collins) the high court interpreted the ex post facto clause to prohibit legislation
"`[1] which punishes as a crime an act previously committed, which was innocent when done; [2] which makes more burdensome the punishment for a crime, after its commission, or [3] which deprives one charged with crime of any defense available according to the law at the time when the act was committed.'"
The Collins court also supplied an abbreviated formulation of the rule: "Legislatures may not retroactively alter the definition of crimes or increase the punishment for criminal acts." (Id. at p. 43, 110 S.Ct. 2715.)[4]
*840 Shroff and Murrain contend application of the 1997 amendment to them would violate ex post facto principles because it eliminated their right to expunge their convictionsa right they had when they committed their crimes provided they successfully completed the terms of their probation. In other words, they claim the 1997 amendment increased the punishment for their crimes for purposes of the ex post facto clause.
While earlier cases had included a "disadvantage" to a defendant as a component of ex post facto analysis (see, e.g., Weaver v. Graham, supra, 450 U.S. at pp. 28-29, 101 S.Ct. 960), "Collins refocused the analysis on defendant's punishment." (People v. Fioretti (1997) 54 Cal.App.4th 1209, 1213, 63 Cal.Rptr.2d 367.) "The proper inquiry ... is not whether the law results in a [burden] [or] disadvantage to the person affected by it but rather whether it increases the penalty by which a crime is punished." (Ibid., italics added.) Following Collins, "the ex post facto clause prohibits not just a burden but a more burdensome punishment." (People v. McVickers, supra, 4 Cal.4th at p. 84, 13 Cal.Rptr.2d 850, 840 P.2d 955, original italics.)
Although the 1997 amendment worked a disadvantage to Shroff and Murrain, who otherwise would have been able to have their convictions expunged, such disadvantage did not constitute an increase in the penalty for the crimes they committed. Elimination of the opportunity for reinstatement "as a law-abiding member of society" (People v. Chandler, supra, 203 Cal.App.3d at p. 788, 250 Cal.Rptr. 730) simply is not an increased punishment for Shroff's and Murrain's crimes. (See People v. Fioretti, supra, 54 Cal.App.4th at pp. 1213-1214, 63 Cal.Rptr.2d 367.)
Nor was the 1997 amendment punishment within the meaning of the constitutional prohibitions against ex post facto laws because it (1) was unrelated to the length or nature of the defendant's incarceration or constructive custody, (2) did not increase imprisonment, forestall parole or extend probation, (3) did not decrease the trial court's discretion to impose the most appropriate sentence for the defendant and (4) involved a collateral matter that did not change the primary effect of the convictions. (State v. Burke (1991) 109 Or.App. 7, 11-12, 818 P.2d 511, 513-514.)[5]
Shroff's and Murrain's reliance on pre-Collins cases (People v. Martinez (1988) 197 Cal.App.3d 767, 243 Cal.Rptr. 66; People v. Hoze (1987) 195 Cal.App.3d 949, 241 Cal.Rptr. 14; Sovereign v. People (1983) 144 Cal.App.3d 143, 192 Cal.Rptr. 469; People v. Rutledge (1983) 139 Cal.App.3d 620, 188 Cal.Rptr. 846) to the effect that the elimination of the right to expungement is an increase in punishment is of little value in current ex post facto analysis under Collins. (Accord, People v. Fioretti supra, 54 Cal.App.4th at p. 1214, 63 Cal. Rptr.2d 367.)
The 1997 amendment of section 1203.4 did not violate ex post facto principles.

III. Effect on Shroff's Deportation

Shroff contends that if his conviction is not expunged pursuant to section 1203.4 he will be deported, and thus the effect of the 1997 amendment as to him will be increased punishment for his 1991 conviction. The contention is without merit.
Deportation is not punishment for the commission of crimes within the context of ex post facto analysis. (Harisiades v. Shaughnessy (1952) 342 U.S. 580, 594-595, 72 S.Ct. 512, 96 L.Ed. 586.)
*841 Shroff argues he was persuaded to plead guilty in 1991 in large part because of the benefit of expungement that the law provided for if he successfully completed the terms of his probation. His counsel in 1991 has so declared. Notwithstanding this uncontroverted evidence, the plea bargain agreement reached with the People in 1991 did not address this point.[6] Therefore, Shroff cannot invoke principles of specific performance or of estoppel to preclude application of the 1997 amendment to his case.
Further, we note that the change of plea form specifically shows that Shroff, as a non-citizen of the United States, acknowledged that a possible consequence of his guilty plea would be "deportation, exclusion from admission to this country, and/or denial of naturalization."

IV. Murrain's Specific Performance Argument

Murrain contends that his plea bargain included his right to have the conviction expunged following successful completion of probation and that the People should be held to their end of the bargain. There is no support for this contention.
Murrain's change of plea form did not include any reference to the right to expungement under section 1203.4. (See fn. 6, ante.) Murrain unjustifiably relies on the following language contained in the pre-printed probation order form, which states:
"You are hereby informed that: [¶] Every defendant who has fulfilled the conditions of his probation for the entire period thereof, or who shall have been discharged from probation prior to the termination of the period thereof, shall at any time thereafter be permitted by the Court to withdraw his plea of guilty and enter a plea of not guilty, or if he has been convicted after a plea of not guilty, the Court shall set aside the verdict of guilty; and in either case the Court shall thereupon dismiss the accusation or information against such defendant, who shall thereafter be released from all penalties and disabilities resulting from the offense or crime of which he has been convicted."
This boilerplate language does not in any fashion indicate that Murrain's right to have the conviction expunged under section 1203.4 was part of the plea bargain. Murrain cannot rely on contract principles (specific performance) or principles of estoppel.

DISPOSITION
Orders reversed.
HUFFMAN, Acting P.J., concurs.
McDONALD, J., dissenting:
With deft use of the semantics of retroactivity, the majority opinion transmogrifies an impermissible retroactive application of a criminal statute into a permissible prospective application of the statute and thereby deprives the defendants of criminal conviction expungement rights to which they were entitled under the law extant at the time they committed their respective offenses. This result is unusually harsh in this case. Not only were the offenses committed before the effective date of the amendment to Penal Code section 1203.4,[1] but the defendants each had satisfactorily completed his probation before the effective date of the amendment; each needed only to file a petition for expungement to obtain section 1203.4 relief.
The majority opinion first concludes the 1997 amendment to section 1203.4 should not be applied retroactively: "[W]e find the Legislature did not intend retroactive application, but rather prospective application." (Maj.opn., ante, p. 838.) The opinion then posits that the statute's amendment *842 acts prospectively and not retroactively because it applies to petitions for expungement that are filed after the effective date of the amendments: "[W]e conclude the Legislature intended the restrictions of the 1997 amendment to apply to section 1203.4 relief petitions filed on or after January 1, 1998." (Maj. opn., ante, p. 839.) The problem is that the majority opinion's recitation of prospective/retroactive application of the amendment avoids the issue in the case: whether the 1997 amendment to section 1203.4 is applicable to petitions for expungement filed after 1997 for offenses committed, and for which satisfactory completion of probation has occurred, before 1998.
The majority opinion unflinchingly applies the 1997 amendment to section 1203.4 to offenses committed before 1998, which is a retroactive application as to those offenses. Both parties concede the application of the 1997 amendment to the pre-1998 offenses is a retroactive application of the amendment; it is for that reason the parties spent considerable space in their briefs on the ex post facto arguments. The majority opinion correctly notes that ex post facto arguments are irrelevant to the application of statutes that apply prospectively only. Nevertheless, the majority opinion merely concludes: "The fact that Schroff's and Murrain's convictions predate January 1, 1998, is simply not relevant. Nor does this fact render the 1997 amendment retroactive." (Maj. opn., ante, p. 839.) The majority opinion treats the 1997 amendment to section 1203.4 as a mere procedural matter (see People v. Acosta (1996) 48 Cal.App.4th 411, 418, 55 Cal.Rptr.2d 675) similar to the rules of conduct of a trial held after the effective date of a statute's amendment (see Tapia v. Superior Court (1991) 53 Cal.3d 282, 286, 279 Cal.Rptr. 592, 807 P.2d 434). However, I cannot view the elimination of the right of expungement a mere procedural matter. Although the majority opinion asserts its conclusion "is in keeping with the presumption that statutes operate prospectively and the law's general disapproval of retroactive laws" (maj. opn., ante, p. 839; see § 3) the opinion in fact applies the 1997 amendment to section 1203.4 retroactively to offenses committed before its effective date in direct contradiction of what the opinion's language purports to do.
I agree with the majority opinion that the 1997 amendment to section 1203.4 does not apply retroactively. In my opinion that means it does not apply to offenses committed before its effective date. This court outlined the considerations for identifying a retroactive application of a statute in People v. Perez (1998) 68 Cal. App.4th 346 at page 352, 80 Cal.Rptr.2d 188:
"In Aetna Cas. & Surety Co. v. Ind. Acc. Com. (1947) 30 Cal.2d 388, 391, 182 P.2d 159 (Aetna), the court stated: `"A retrospective law is one which affects rights, obligations, acts, transactions and conditions which are performed or exist prior to the adoption of the statute." [Citations.]' (Ibid., quoting American States W.S. Co. v. Johnson (1939) 31 Cal.App.2d 606, 613, 88 P.2d 770.) Statutes are retrospective if they otherwise change `the legal effects of past events' or `impose[] a new or additional liability and substantially affect[] existing rights and obligations' (Aetna, supra, at pp. 394-395, 182 P.2d 159) or if they `change[] the legal consequences of past conduct by imposing new or different liabilities based upon such conduct. [Citation.]' (Tapia v. Superior Court (1991) 53 Cal.3d 282, 291, 279 Cal.Rptr. 592, 807 P.2d 434, italics added.)"
In Perez we held that the 1997 Penal Code section 1000 et seq. drug diversion program could not be applied to a defendant whose drug offense occurred prior to 1997; he was entitled to petition for the diversion program in existence at the time of his offense. One of the purposes of the drug diversion program is to "allow a defendant to avoid, for most purposes, the *843 stigma and adverse consequences of a criminal conviction." (People v. Perez, supra, 68 Cal.App.4th 346 at p. 355, fn. 5, 80 Cal.Rptr.2d 188.) Similarly, one of the purposes of the section 1203.4 expungement is to avoid for most purposes the stigma and adverse consequences of a criminal conviction. In addition, a defendant must apply for the drug diversion program, and a criminal defendant must satisfactorily complete probation and petition for expungement under section 1203.4.
In Perez we determined that application of the diversion statute adopted after commission of the offenses was an impermissible retroactive application of the new program "because it changes the legal consequences of past conduct by imposing liabilities different from the liabilities extant at the time of the past conduct." (People v. Perez, supra, 68 Cal.App.4th 346 at p. 353, 80 Cal.Rptr.2d 188.) The post-offense diversion program, among other changes, required a plea of guilty and increased the period for deferred entry of judgment. In the instant case, the 1997 amendment to section 1203.4 does not merely make more onerous the expungement opportunity for the defendants, it removes the expungement right entirely. It is difficult to imagine a more significant change in "the legal consequences of past conduct by imposing liabilities different from the liabilities extant at the time of the past conduct." (Ibid.)
Two recent reported cases exemplify what in my view is the analytic confusion in the retroactive/prospective application of amendments to criminal statutes. In People v. Lugas (1999) 76 Cal.App.4th 696, 91 Cal.Rptr.2d 11 the issue was the applicability of the 1996 amendment to section 4852.13 to criminal offenses committed prior to the effective date of the amendment. The amendment changed the issuance of certificate of rehabilitation from a mandatory to a discretionary trial court act. The defendant contended that application of the 1996 amendment to his prior offenses was a retroactive application of the amendment that was impermissible for two reasons: retroactive application violated the constitutional prohibition against ex post facto laws and violated the section 3 statutory prohibition of retroactive application of criminal statutes without express legislative authorization. The appellate court recited an exhaustive analysis of ex post facto law and concluded that although application of the 1996 amendment to the defendant's prior offenses was a retroactive application, the retroactive application did not violate the constitutional prohibitions against ex post facto laws: the amendment, the court concluded, did not increase the defendant's punishment.
In response to the defendant's second contention, the court inexplicably switched horses and held, as does the majority in the instant case, that the 1996 amendment to section 4852.13 applied to the last act required of the defendant to obtain a certificate of rehabilitationthe filing of a petition for a certificate of rehabilitation and therefore the amendment applied prospectively only and not retroactively. Of course, if the amendment was prospective only, the entire ex post facto analysis and holding was irrelevant because the ex post facto issue only arises on the retroactive application of a criminal statute. In my view, the section 3 analysis of the Lugas court is incorrect for the same reason the majority in the instant case is incorrect; neither address the issue of whether application of the relevant amendment to the prior criminal offenses is a retroactive application of a criminal statute in violation of section 3. At least the majority in the instant case is consistent by conceding the ex post facto analysis is irrelevant if the application of a criminal statute is prospective only. In my view the inconsistency of the Lugas court analysis is inexplicable.
Equally difficult to understand is People v. Woodson (1999) 76 Cal.App.4th 1051, 90 Cal.Rptr.2d 839. In Woodson the defendant challenged as an unconstitutional ex post facto retroactive application of a criminal statute the 1997 amendment to section *844 4852.03. That amendment increased the waiting period to file a petition for a certificate of rehabilitation from three to five years. The defendant contended that application of the additional waiting period of five years to his prior criminal offense was an unconstitutional ex post facto application of the amendment to section 4852.03. The appellate court held the increase in the waiting period was not an increase in punishment and therefore the retroactive application of the amendment did not violate the ex post facto provisions of the California and United States constitutions. The court then summarily addressed the section 3 retroactivity issue in a footnote by saying, in effect, that if the retroactive application of a criminal statute did not violate ex post facto prohibitions, "section 3 ... is not implicated." (Id. at p. 1055, fn. 2, 90 Cal.Rptr.2d 839.) The court's conclusion that section 3 applies only to statutes that are unconstitutional under the ex post facto constitutional provisions makes section 3 superfluous and is, to me, an astonishing misstatement of the law. (See maj. opn., fn. 3, ante, that acknowledges ex post facto laws are necessarily retroactive but retroactive laws are not necessarily ex post facto.)
Neither the majority opinion nor the opinions in Lugas and Woodson address the issue of what is a retroactive application of a criminal statute. As a result they do not, in my opinion, present a cognizable legal theory of decision. Based on Perez, it is my view that the 1997 amendment to section 1203.4, when applied to pre-1997 offenses, is a retroactive application of a criminal statute; and although its retroactive application is perhaps not invalid as an ex post facto law, its retroactive application is prohibited by section 3. The majority opinion is in direct conflict with the opinion of this court in Perez, which the majority opinion ignores. I would affirm the judgment of the trial court.
NOTES
[1] All statutory references are to the Penal Code unless otherwise specified.
[2] In People v. Henderson (1980) 107 Cal. App.3d 475, 488, 166 Cal.Rptr. 20, the Court of Appeal observed: "Under the California Constitution, a statute enacted at a regular session of the Legislature generally becomes effective on January 1 of the year following its enactment except where the statute is passed as an urgency measure and becomes effective sooner. [Citation.] In the usual situation, the `effective' and operative' dates are one and the same, and with regard to ex post facto restrictions, a statute has no force and effect until such effective-operative date. [Citation.]"
[3] Our conclusion that the 1997 amendment was not a retrospective law would normally eliminate the need for an ex post facto analysis. "Every ex post facto law must necessarily be retrospective; but every retrospective law is not an ex post facto law.... The former, only, are prohibited." (Calder v. Bull (1798) 3 U.S. (3 Dall.) 386, 391, 1 L.Ed. 648, 650, italics deleted; see also Weaver v. Graham (1981) 450 U.S. 24, 29, 101 S.Ct. 960, 67 L.Ed.2d 17 ["[T]wo critical elements must be present for a criminal or penal law to be ex post facto: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it."] fns. omitted, italics deleted.)

Notwithstanding our conclusion that the 1997 amendment was not a retrospective law, we consider whether the amendment as applied to Shroff and Murrain violated ex post facto principles because the parties have devoted a large portion of their briefing to the issue.
[4] The Collins court explained a deprivation of a formerly available defense is "linked to the prohibition on alterations in `the legal definition of the offense' or `the nature or amount of the punishment imposed for its commission.'" (Collins v. Youngblood, supra, 497 U.S. at p. 50, 110 S.Ct. 2715.)
[5] While out-of-state opinions are not binding authority, they often are persuasive when their reasoning is sound. Further, we note the California Supreme Court cited State v. Burke, supra, in People v. McVickers, supra, 4 Cal.4th at pages 86-87, 13 Cal.Rptr.2d 850, 840 P.2d 955.
[6] We have taken judicial notice of the superior court files in Shroff's and Murrain's cases.
[1] All statutory references are to the Penal Code.