[Crim. No. 14756. Fourth Dist., Div. Two. June 21, 1983.]

JERRY A. SOVEREIGN, Plaintiff and Respondent, v.
THE PEOPLE, Defendant and Appellant.

## COUNSEL

John K. Van de Kamp, Attorney General, A. Wells Petersen and Steven H. Zeigen, Deputy Attorneys General, for Defendant and Appellant.

Charles E. Ward, Public Defender, and Littleton M. Gunn, Deputy Public Defender, for Plaintiff and Respondent.

## OPINION

**McDANIEL, J.**—The People appeal from the denial of their motion to vacate an order issuing a certificate of rehabilitation to plaintiff Jerry A. Sovereign (petitioner). We shall affirm the judgment on constitutional grounds.

### FACTS

The essential facts are not in dispute. Petitioner was convicted of violating Penal Code section 487 (grand theft) on September 16, 1976. He was sentenced to state prison for the term prescribed by law, released on parole on April 27, 1978, and discharged from parole in May 1979.

On July 30, 1981, he petitioned the San Bernardino Superior Court for a certificate of rehabilitation pursuant to the procedure set forth in Penal Code section 4852.01 et seq.,[1] for the restoration of civil and political rights. This petition was granted on August 31, 1981.

---

[1]All statutory references, unless otherwise specifically noted, shall be to the Penal Code.

Almost a year later, on August 2, 1982, the People filed a motion to vacate the order to issue the certificate of rehabilitation on the ground that petitioner had not completed the waiting period provided in section 4852.03. The People did not argue that petitioner had failed to "live an honest and upright life" since his release from prison, as required by section 4852.05. Rather, they claimed that the certificate was void as *prematurely* granted! Moreover, as already noted, the People waited almost a year before challenging the validity of the certificate.

Petitioner had satisfied the waiting period prescribed by the version of section 4852.03 in effect when he was discharged from prison and commenced serving the waiting period prescribed by statute. That section provided:

"The period of rehabilitation shall begin to run upon the discharge of the petitioner from custody due to his completion of the term to which he was sentenced or upon his release on parole or probation, whichever is sooner. For purposes of this chapter, the period of rehabilitation shall constitute three years' residence in this state, plus a period of time determined by the following rules:

"(1) To the three years there shall be added 30 days for each year of the term prescribed by statute as the maximum penalty of imprisonment for the crime of which the petitioner was convicted. . . ."

Upon granting the certificate of rehabilitation, the trial court is required to send a copy to the Governor together with a recommendation that he grant the petitioner a full pardon based thereon. (§ 4852.13.) The trial court did so in this case, although it has apparently not been acted on by the Governor.

Section 4852.03 was amended by the Legislature in 1980, effective January 1, 1981. Under the new version, which had been in effect for eight months when petitioner filed for his certificate, the waiting period as applied to petitioner is three years residence in state plus two years. Thus, under amended section 4852.03 petitioner would not have been eligible to file until April 27, 1983. Furthermore, section 4852.03 as amended is expressly retroactive, and specifically provides that "[a]ny certificate of rehabilitation which is issued and under which the petitioner has not fulfilled the requirements of this chapter shall be void." (§ 4852.03, subd. (4).)

The trial court denied the motion to vacate, ruling that application of the amended statute to petitioner would subject him to additional punishment,

a result proscribed by the ex post facto clauses in the United States and California Constitutions (art. I, § 10, and art. I, § 9, respectively).

The People have appealed from this judgment. They contend that section 4852.03 as amended is applicable to petitioner and is not a violation of the constitutional proscriptions against ex post facto laws. Petitioner responds that the People's motion to vacate was untimely, and further that the amendment, if applied to him, would indeed violate the constitutional prohibitions against ex post facto laws.

## DISCUSSION

■ Preliminarily, we note, despite the fact that petitioner became eligible on April 27, 1983, to file again for a certificate under the new statute, that the matter is not moot. The ex post facto issue remains viable because, were petitioner required to start over and to file a new petition under the amended statute, he would be forced to establish for a second time that he has complied with the stringent eligibility requirements set forth in section 4852.01 et seq. His opportunity to obtain a full pardon, and his ability to be reinstated to his former profession, the practice of law, would thereby be further delayed. Hence, as a practical matter, the outcome of this appeal will have a "direct bearing and real effect" upon the petitioner's application for a full pardon and reinstatement to the bar. (*Terry* v. *Civil Service Commission* (1952) 108 Cal.App.2d 861, 872 [240 P.2d 691].)

I

■ Petitioner contends that the People's delay of almost one year in bringing the motion to vacate constitutes gross misconduct in violation of his due process rights. Petitioner relies on cases involving violations of the right to speedy trial and governmental entrapment, but cites no authority for the proposition that the People may be estopped on the grounds of undue delay from filing a motion to vacate an allegedly *void* order.

It is well settled that "[a] judgment or order which is void on the face of the record thereof may be set aside at any time by the court that made it, on the ground that it is void. [Citations.] If the court refuses to vacate such an order, on motion, it being an order made after judgment, the party aggrieved may appeal and have the order reviewed and reversed." (*Luckenbach* v. *Krempel* (1922) 188 Cal. 175, 176-177 [204 P. 591]; *Daudert* v. *People* (1979) 94 Cal.App.3d 580, 585 [156 Cal.Rptr. 640].) Hence, although we view the delay as bordering on the draconian, the People were not estopped from filing the motion to vacate, or from appealing the trial court's denial of said motion.

Therefore, we turn to the merits of the appeal to determine whether the trial court properly concluded that application of the amendment to petitioner would violate the constitutional prohibitions against ex post facto laws.

## II

In 1976 the California Legislature forthrightly declared that "the purpose of imprisonment for crime is punishment." (§ 1170, subd. (a)(1).) The time has come to recognize with equal candor that "imprisonment" represents only the first phase of society's retribution against the convicted criminal. "Punishment" in a variety of forms besets the parolee, the probationer and ex-felon long after the completion of his prison term. As one writer has observed: "Ours is a penalty system of justice. Ex-prisoners continue to suffer from statutory and extra-legal penalties long after their release from prison." Note, *The Revolving Door: The Effect of Employment Discrimination Against Ex-Prisoners* (1975) 26 Hastings L.J. 1403, 1432.

Upon his release from prison, the ex-felon cannot simply resume the life he led before prison as if nothing had happened. Besides the well-known informal discriminations, he or she confronts a battery of statutory disabilities. Perhaps the best known of these is the loss of the right to vote, once suffered by all persons convicted of any "infamous crime" (*Stephens* v. *Toomey* (1959) 51 Cal.2d 864 [338 P.2d 182]), and now limited to those on parole (Cal. Const., art. II, § 4). In addition, the ex-felon may not serve on petit or grand juries (§ 893; Code Civ. Proc., § 199), not be employed as a peace officer for the state, city or county (Gov. Code, § 1029, subd. (a)), not sit for the state civil service examination (Gov. Code, § 18935), not possess a concealable weapon (§ 12021) and, in some cases, not hold public office (Cal. Const., art. VII, § 8).

The ex-felon may be impeached as a witness or as a defendant on the basis of his prior conviction, and his prior conviction may be used as a sentence enhancement in any criminal proceeding (Evid. Code, § 788, Cal. Const., art. I, § 28, subd. (f)). Also, he must register with local police authorities if his offense was related to certain drug and sex crimes (§ 290; Health & Saf. Code, § 11590).

Finally, the ex-felon is precluded from obtaining a license to practice, and is subject to discharge from, a host of trades and professions. Their number is too numerous to list here, but ranges from barber (Bus. & Prof. Code, § 6576) and seeing-eye dog trainer (Bus. & Prof. Code, § 7211.9) to chiropractor (§ 10 of the Chiropractic Act [Deering's Ann. Bus. & Prof.

Code (1976 ed.) Appen., p. 207; 3 West's Ann. Bus. & Prof. Code (1974 ed.) p. 146] and lawyer (Bus. & Prof. Code, § 6101).

The certificate of rehabilitation and executive pardon do not automatically remove all of the foregoing disabilities. But they do eliminate or significantly ameliorate some. Most significantly, the granting of a pardon based on a certificate of rehabilitation results in the restoration of full civil and political rights. Section 4852.17 in part provides: "Whenever a person is granted a full and unconditional pardon by the Governor, based upon a certificate of rehabilitation, the pardon shall entitle the person to exercise thereafter all civil and political rights of citizenship, . . ."

In addition, a person who has been granted a certificate of rehabilitation and pardon may *not* be impeached as a witness on the basis of his former conviction. (Evid. Code, § 788.) He is relieved of the obligation to register with local police authorities pursuant to section 290 (§ 290.5). He may hold office as a parole officer in the Department of Corrections or the Department of the Youth Authority, or as a probation officer in a county probation department. (Gov. Code, § 1029, subd. (b).) His reinstatement to the licensed professions is not, of course, automatic. (§ 4852.15; *In re Lavine* (1935) 2 Cal.2d 324 [41 P.2d 161, 42 P.2d 311]; *Feinstein* v. *State Bar* (1952) 39 Cal.2d 541 [248 P.2d 3].) However, the certificate constitutes strong evidence to be considered by the licensing authority. Indeed, one writer suggests that ". . . the effect of a pardon obtained under a certificate of rehabilitation should carry *more* weight than an advisory board pardon, since it is obtained only with the concurrence of both a judge and the governor, and only after several years' close watch by the local law enforcement agencies." (Booth, 2 Cal. Criminal Law Practice (Cont.Ed.Bar) § 25.29, p. 640, italics added. See also Note, *The Effect of a Pardon on License Revocation and Reinstatement* (1964) 15 Hastings L.J. 355.) As the future Justice Mosk observed the year section 4852 was enacted: "[T]he act . . . will be of significant benefit to men who have made their mistake and subsequently have proved their inclination and ability to become constructive members of society." (Mosk, *Certificates of Rehabilitation and the New Pardon Procedure* (1943) 18 State Bar J. 172, 175.)

■ The ex-prisoner is subject to a variety of penalties because of his criminal conviction which the certificate of rehabilitation can, either directly or indirectly, effectively remove. Therefore, by increasing the waiting period requisite to filing a petition for the certificate, the amendment to section 4852.03 prolongs the time during which ex-prisoners remain subject to such penalties. Hence, we must determine whether, as applied to petitioner, the amendment imposes an additional punishment prohibited by the ex post fac-

to clauses of the United States and California Constitutions (art. I, § 10 and art. I, § 9 respectively).

In the very first case construing the ex post facto clause in the United States Constitution, Justice Chase formulated a definition of the ex post facto prohibition which remains definitive law to this day. The clause prohibits, he wrote:

"1st. Every law that makes an action done before the passing of the law; and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. *Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed.* 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender." (*Calder* v. *Bull* (1798) 3 U.S. (3 Dall.) 386, 390 [1 L.Ed. 648, 650], italics added; see also *Stickel* v. *Superior Court* (1982) 136 Cal.App.3d 850, 856 [186 Cal.Rptr. 560].)

In *Stickel* v. *Superior Court, supra,* 136 Cal.App.3d 850, the court elaborated on that definition in light of recent California and United States Supreme Court decisions, stating:

"As the United States Supreme Court recently explained in *Weaver* v. *Graham, supra,* 450 U.S. 24 [67 L.Ed.2d 17, 101 S.Ct. 960], through this prohibition against ex post facto laws, 'the Framers sought to assure that legislative Acts give fair warning to their effect and permit individuals to rely on their meaning until explicitly changed. . . . The ban also restricts governmental power by restraining arbitrary and potentially vindictive legislation. . . . [¶] In accord with these purposes, our decisions prescribe that two critical elements must be present for a criminal or penal law to be ex post facto: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it.' (*Id.* at pp. 28-29 [67 L.Ed.2d at p. 23], citations and fns. omitted.) [¶] The California Supreme Court has formulated a similar standard. The ex post facto clauses of federal and state Constitutions, that court held, '. . . prohibit retrospective laws that (1) impose criminal liability for conduct innocent when it occurred, (2) *increase the punishment prescribed for a crime at the time it was committed,* or (3) by necessary operation and " 'in [their] relation to the offense, or [their] consequences, alter the situation of the accused to his disadvantage . . . .' " ' (*Conservatorship of Hofferber* (1980) 28 Cal.3d 161, 180 [167 Cal.Rptr. 854, 616 P.2d 836].)" (*Id.* at p. 857, italics supplied.)

Relying heavily on the opinion of the Attorney General in 65 Ops.Cal.Atty.Gen. 232, the People contend that the amendment to section 4852.03 does not inflict greater punishment on petitioner, because the term "punishment" in this context does not embrace any penalties other than imprisonment. Section 4852.03, they argue, is concerned exclusively with "rehabilitation" of the ex-felon. The People also contend that the amendment cannot deprive petitioner of any "right" protected by the Constitution, because the granting of a certificate is not a "vested" right, but rather remains subject to the discretion of the trial court and the Governor.

In our view the law does not support the People's contention.

The People rely on *Weaver* v. *Graham* (1981) 450 U.S. 24 [67 L.Ed.2d 17, 101 S.Ct. 960], for the proposition that the amendment cannot violate the ex post facto clause because the granting of a certificate is discretionary. That reliance is misplaced.

In *Weaver,* the United States Supreme Court held that a Florida law which altered the availability of "gain time for good conduct" violated the ex post facto clause when applied to an inmate whose crime had been committed before the operative date of the statute. The Florida court had denied Weaver habeas corpus relief on the ground that the granting of such time was discretionary, "an act of grace . . . [which] may be withdrawn, modified or denied." (450 U.S. at p. 28 [67 L.Ed.2d at p. 22].) The high court rejected that reasoning, stating, "Contrary to the reasoning of the Supreme Court of Florida, a law need not impair a 'vested right' to violate the *ex post facto* prohibition. [Fn. omitted.]" (*Id.* at p. 29 [67 L.Ed.2d at p. 23].) "The presence or absence of an affirmative, enforceable right is not relevant . . . to the *ex post facto* prohibition, . . ." (*Id.* at p. 30 [67 L.Ed.2d at p. 24].) What was relevant was that the new law potentially diminished petitioner's opportunity for early release, an opportunity to which he was entitled at the time he committed the crime. (*Id.* at p. 36 [67 L.Ed.2d at p. 27.]; see also *In re Stanworth,* 33 Cal.3d 176, 181.) The court concluded that Florida must apply the parole standards in effect when the crime occurred.

The California Supreme Court has recently followed the high court's *Weaver* decision. In *In re Stanworth, supra,* 33 Cal.3d 176, the court considered whether the determinate sentencing law, enacted after the date of Stanworth's crime, could constitutionally operate to delay his parole release date. Because the date had not been set and was subject to the discretion of the Board of Prison Terms, the People argued that Stanworth had no "vested" right to be protected. Relying on *Weaver,* the court rejected that ar-

gument: "The critical issue before us . . . [is] . . . not whether a change in the actual date of release has been effected, but whether the standards by which defendant's date of release is to be determined have been altered to his detriment." (*Id.* at p. 186.) The court concluded that the ex post facto clause required that Stanworth's parole release date be determined according to the guidelines in effect when the crimes occurred.

In light of the foregoing case law, it is clear that the mere fact that petitioner's application for a certificate of rehabilitation is subject to the discretion of the trial court is irrelevant to the constitutional issue. The ex post facto clause protects the petitioner's *opportunity* under the former statute to file his petition on the date prescribed by the statute in effect when he completed his prison term and commenced the waiting period.[2]

The People's reliance on *People* v. *Daudert, supra,* 94 Cal.App.3d 580, for the proposition that section 4852.03 contains no "penal" elements cognizable under the ex post facto clause, is equally misplaced.

In *People* v. *Daudert, supra,* the court held that Daudert was entitled to the shorter waiting period for filing his petition under section 4852.03 which resulted from an amendment to the Penal Code *reducing* the maximum sentence for the crime of which he had been convicted. Under the old version of section 4852.03, the waiting period was three years residence plus an additional thirty days for each year of the maximum term of imprisonment prescribed for the crime of which petitioner was convicted. Hence, a reduction in the maximum sentence resulted in a shorter waiting period.

The court concluded that petitioner should benefit from the legislative determination to lighten his burden. It was in this spirit that the court stated: "The issue here is rehabilitation, not punishment." (*Id.* at p. 588, fn. 5.) However, the court also anticipated that its holding might erroneously be interpreted as authority for *increasing* an ex-prisoner's waiting period under a reverse fact situation. Hence the *Daudert* court expressly reserved judgment on that issue: "Since the maximum penalty prescribed by statute for the crime of which petitioner was convicted was less at the time of the filing of the petition than it was at the time petitioner committed the crime, *we need not reach the question whether if the maximum penalty had been increased in the interim, the petitioner's rehabilitation period could be mea-*

---

[2]We have determined that the ex post facto clauses prohibit the application of section 4852.03 retroactively to those, such as petitioner, who commenced the waiting period *before* the amended version went into effect. We express no opinion as to the constitutionality of applying the amended statute to those who committed crimes, but had not begun the waiting period, before the operative date of the new statute.

*sured by that increased maximum without violating rules against ex post facto legislation."* (*Id.* at p. 589, fn. 6, italics added.)

That question cannot be avoided any longer.

The need to punish those who violate society's rules of behavior has been a constant source of inspiration to man's creative energies. The United States Supreme Court recognized this unhappy fact in two landmark decisions which arose out of, yet miraculously transcended, one of the most vindictive periods in American history.

The year was 1868, and the political atmosphere was rife with bitterness and demagoguery. Public sentiment called for reprisal against the men who had led the late rebellion. This sentiment was evident in the statutes at issue in *Cummings* v. *Missouri* (1867) 71 U.S. (4 Wall.) 277 [18 L.Ed. 356], and *Ex Parte A. H. Garland* (1867) 71 U.S. (4 Wall.) 333 [18 L.Ed. 366]. *Cummings* involved a statute which required a "test-oath" as a condition to teach, and *Garland* involved a statute which required a similar oath as a condition to practice law in the federal courts. The penalty for failure to take the oath was disqualification from the vocations in question. Yet both statutes precluded Cummings and Garland from taking the oath because of their activities during the war. The diabolical result was that inability to take the oath operated as an admission of guilt and resulted in the disqualifying penalty.

The court, rising above political passions, struck down both laws as retroactive penal statutes in violation of the ex post facto clause. In so doing, the court rejected the argument that the penalties involved did not represent "punishment" in the traditional sense of deprivation of "life, liberty or property." Mr. Justice Field's opinion in *Cummings* is worth quoting freely, for its reasoning and eloquence on this subject have never been equalled:

"The disabilities created by the Constitution of Missouri must be regarded as penalties—they constitute punishment. We do not agree with the counsel of Missouri that 'to punish one is to deprive him of life, liberty or property, and that to take from him anything less than these is no punishment at all.' The learned counsel does not use these terms—life, liberty, and property— as comprehending every right known to the law. He does not include under liberty freedom from outrage on the feelings as well as restraints on the person. He does not include under property those estates which one may acquire in professions, though they are often the source of the highest emoluments and honors. The deprivation of any rights, civil or political, previously enjoyed, may be punishment; the circumstances attending and the causes of the deprivation determining this fact. Disqualification from office

may be punishment, as in cases of conviction upon impeachment. Disqualification from the pursuits of a lawful avocation, or from positions of trust, or from the privilege of appearing in the courts, or acting as executor, administrator or guardian, may also, and often has been, imposed as punishment. . . .

"The theory upon which our political institutions rest is, that all men have certain inalienable rights—that among these are life, liberty and the pursuit of happiness; and that in the pursuit of happiness all avocations, all honors, all positions, are alike open to everyone, and that in the protection of all these rights all are equal before the law. Any deprivation or suspension of any of these rights for past conduct is punishment, and can be in no otherwise defined." (71 U.S. at pp. 320-321 [18 L.Ed. at pp. 362-363].)

Justice Field's conclusion in *Garland* was the same: "[E]xclusion from any of the professions or any of the ordinary avocations of life for past conduct can be regarded in no other light than as punishment for such conduct." (71 U.S. 333, at p. 377 [18 L.Ed. 366, at p. 370].)

If denying persons their civil and political rights, disqualifying them from office, excluding them from positions of trust or employment, and revoking their privilege of appearing in the courts constitutes "punishment," then surely prolonging the time that ex-prisoners remain subject to these penalties constitutes punishment, as well. As earlier noted, this would be precisely the effect of applying the amendment to petitioner herein. Hence we conclude that the trial court properly calculated petitioner's waiting period under the version of section 4852.03 in effect when he completed his term and commenced the waiting period. To have done otherwise would have been a manifest violation of the constitutional prohibitions against ex post facto laws.

### Disposition

The judgment is affirmed.

Kaufman, Acting P. J., and Rickles, J., concurred.