91 Cal.Rptr.2d 11 (1999)
76 Cal.App.4th 696
The PEOPLE, Plaintiff and Respondent,
v.
Donald Joseph LUGAS, Defendant and Appellant.
No. H018805.
Court of Appeal, Sixth District.
November 30, 1999.
Review Granted February 29, 2000.
*13 John M. Wadsworth, for Appellant.
Bill Lockyer, Attorney General, David Druliner, Chief Assistant Attorney General, Ronald A. Bass, Sr. Assistant Attorney General, Laurence K. Sullivan and Aileen Bunney, Deputy Attorneys General, for Respondent.
*12 ELIA, J.
Donald Joseph Lugas appeals from the denial of his petition for a certificate of rehabilitation (Pen.Code § 4852.01 et seq.).[1] (§ 1237, subd. (b).) On appeal, Lugas argues that application of section 4852.13, as amended in 1996, to his petition violated the ex post facto clauses of the federal and California Constitutions (U.S. Const., art. I, § 10; Cal. Const., art I, § 9) and constitutional due process guarantees.[2] He also contends that application of section 4852.13, as amended in 1996, to his petition violated the statutory ban on retroactive application of the Penal Code (§ 3). He premises his arguments on the ground that the 1996 amendments came "eighteen years after [he] committed his last offense" and "six years after [he] had already perfected his right to petition for a certificate of rehabilitation and pardon."
We affirm.

A. Legal Background

Article V, section 8 of the California Constitution provides in pertinent part: "Subject to application procedures provided by statute, the Governor, on conditions the Governor deems proper, may grant a reprieve, pardon, and commutation, after sentence, except in case of impeachment.... The Governor may not grant a pardon or commutation to a person twice convicted of a felony except on recommendation of the Supreme Court, 4 judges concurring." "The certified copy of a certificate of rehabilitation transmitted to the Governor shall constitute an application for a full pardon upon receipt of which the Governor may, without any further investigation, issue a pardon to the person named therein, except that, pursuant to Section 8 of Article V of the Constitution, the Governor shall not grant a pardon to any person twice convicted of felony, except upon the written recommendation of a majority of the judges of the Supreme Court." (§ 4852.16.) A certified copy of a certificate of rehabilitation is automatically transmitted to the Governor. (§ 4852.14.)
Prior to its amendment in 1996, section 4852.13 had read: "If, after hearing, the court finds that the petitioner has demonstrated by his course of conduct his rehabilitation and his fitness to exercise all of the civil and political rights of citizenship, the court shall make an order declaring that the petitioner has been rehabilitated, and recommending that the Governor grant a full pardon to the petitioner. Such order shall be filed with the clerk of the court, and shall be known as a certificate of rehabilitation." (Stats.1978, ch. 380, § 126, p. 1189; italics added.)
Since its amendment in 1996, section 4852.13 has stated in pertinent part: "(a) *14 Except as otherwise provided in subdivision (b), if after hearing, the court finds that the petitioner has demonstrated by his or her course of conduct his or her rehabilitation and his or her fitness to exercise all of the civil and political rights of citizenship, the court may make an order declaring that the petitioner has been rehabilitated, and recommending that the Governor grant a full pardon to the petitioner."[3] (Italics added.)
Section 4852.19 declares: "This chapter [regarding certificates of rehabilitation] shall be construed as providing an additional, but not an exclusive, procedure for the restoration of rights and application for pardon. Nothing in this chapter shall be construed as repealing any other provision of law providing for restoration of rights or application for pardon." "Whenever a person is granted a full and unconditional pardon by the Governor, based upon a certificate of rehabilitation, the pardon shall entitle the person to exercise thereafter all civil and political rights of citizenship, including but not limited to: (1) the right to vote; (2) the right to own, possess, and keep any type of firearm that may lawfully be owned and possessed by other citizens; except that this right shall not be restored, and Sections 12001 and 12021 of the Penal Code shall apply, if the person was ever convicted of a felony involving the use of a dangerous weapon." (§ 4852.17.)

B. Procedural History

In 1978, Lugas pled guilty to charges of committing a lewd and lascivious act on a child (§ 288), oral copulation (§ 288a, subd. (c)), and incest (§ 285) against his daughter. Lugas was placed on probation and imposition of sentence was suspended. On October 14, 1983, the superior court granted record clearance pursuant to section 1203.4. On September 5, 1997, the defendant filed a petition for a certificate of rehabilitation.
The trial court understood that section 4852.13, as amended in 1996, made issuance of a certificate of rehabilitation to a petitioner who met the statutory prerequisites discretionary whereas under prior law issuance of a certificate was mandatory. Although the court acknowledged that Lugas had "led a crime-free life for 21 years," it denied Lugas' request for a certificate based on other factors, including the gravity of the crimes and the long-term impact on the victim.

C. Ex Post Facto Claim

Lugas argues that the 1996 amendment of section 4852.13 as applied to him violates the ex post facto prohibition because "a certificate of rehabilitation can, either directly or indirectly, remove a variety of the penalties to which a felon is subject because of his criminal conviction." He cites Sovereign v. People (1983) 144 Cal.App.3d 143, 192 Cal.Rptr. 469, Cummings v. State of Missouri (1866) 71 U.S. (4 Wall.) 277, 18 L.Ed. 356, and Ex parte Garland (1866) 71 U.S. (4 Wall.) 333, 18 L.Ed. 366 for the proposition that statutory disabilities suffered by convicted felons constitute "punishment" for purposes of ex post facto analysis.
In Sovereign v. People, supra, 144 Cal. App.3d 143, 192 Cal.Rptr. 469, a People's appeal, the court considered whether application of an amendment to section 4852.03 increasing the period of rehabilitation, expiration of which was required before filing a petition for a certificate of rehabilitation, would impose additional punishment prohibited by the ex post facto clauses of the United States and California Constitutions. (Id at pp. 149-150, 192 Cal.Rptr. 469.) The court in Sovereign reviewed a number of disabilities suffered by convicted felons but downplayed the *15 fact that a certificate of rehabilitation does not reinstate a convicted felon to any licensed profession. (Id. at pp. 148-149, 192 Cal.Rptr. 469; see § 4852.15.)[4] Quoting extensively from Cummings v. Missouri, supra, 71 U.S. (4 Wall.) 277, 18 L.Ed. 356 and citing Ex Parte Garland, supra, 71 U.S. (4 Wall.) 333, 18 L.Ed. 366, it then determined that the statutory disabilities facing convicted felons constituted "punishment." (Sovereign v. People, supra, 144 Cal.App.3d at pp. 153-154, 192 Cal. Rptr. 469.) It reasoned that, therefore, "prolonging the time that ex-prisoners remain subject to these penalties constitutes punishment, as well." (Id. at p. 154, 192 Cal.Rptr. 469.)
The appellate court in Sovereign determined that "[t]he ex post fact clause protects the petitioner's opportunity under the former statute to file his petition on the date prescribed by the statute in effect when he completed his prison term and commenced the waiting period." (Id. at p. 152, 192 Cal.Rptr. 469.) It concluded that "the trial court properly calculated petitioner's waiting period under the version of section 4852.03 in effect when he completed his term and commenced the waiting period." (Id. at p. 154, 192 Cal.Rptr. 469.)
We believe the court in Sovereign misapplied those early Supreme Court cases. Both Cummings v. Missouri, supra, 71 U.S. (4 Wall.) 277, 18 L.Ed. 356, and Ex Parte Garland, supra, 71 U.S. (4 Wall.) 333, 18 L.Ed. 366, arose following this country's civil war and involved a prescribed oath that was required to practice a profession. The issue in both cases was whether the oath, which essentially required the person to attest that he had never made any statements or engaged in any acts against the United States, constituted punishment of individuals who had supported or had been involved in the Confederate cause or constituted a legitimate qualification. (Cummings v. Missouri, supra, 71 U.S. (4 Wall.) at pp. 319-320; Ex Parte Garland, supra, 71 U.S. (4 Wall.) at pp. 379-380.) As the United States Supreme Court later stated: "[I]n a few cases the ex post facto prohibition had been applied to what appeared to be civil disabilities. Fletcher v. Peck, 6 Cranch 87 [3 L.Ed. 162]; Cummings v. Missouri, 4 Wall. 277 [18 L.Ed. 356]; Ex parte Garland, 4 Wall. 333 [18 L.Ed. 366]; Pierce v. Carskadon, 16 Wall. 234 [21 L.Ed. 276]. The Court has since explained that those cases proceeded from the view that novel disabilities there imposed upon citizens were really criminal penalties for which civil form was a disguise. Burgess v. Salmon, 97 U.S. 381, 385 [24 L.Ed. 1104]." (Harisiades v. Shaughnessy (1952) 342 U.S. 580, 595, 72 S.Ct. 512, 96 L.Ed. 586 [deportation is not a punishment].)
The U.S. Supreme Court later explained, albeit in dicta: "This Court has been called upon to decide whether or not various statutes were penal ever since 1798. Colder v. Bull, 3 Dall. 386 [1 L.Ed. 648]. Each time a statute has been challenged as being in conflict with the constitutional prohibitions against bills of attainder and ex post facto laws, it has been necessary to determine whether a penal law was involved, because these provisions apply only to statutes imposing penalties. *16 In deciding whether or not a law is penal, this Court has generally based its determination upon the purpose of the statute. If the statute imposes a disability for the purposes of punishmentthat is, to reprimand the wrongdoer, to deter others, etc.it has been considered penal. But a statute has been considered nonpenal if it imposes a disability, not to punish, but to accomplish some other legitimate governmental purpose. The Court has recognized that any statute decreeing some adversity as a consequence of certain conduct may have both a penal and a nonpenal effect. The controlling nature of such statutes normally depends on the evident purpose of the legislature. The point may be illustrated by the situation of an ordinary felon. A person who commits a bank robbery, for instance, loses his right to liberty and often his right to vote. If, in the exercise of the power to protect banks, both sanctions were imposed for the purpose of punishing bank robbers, the statutes authorizing both disabilities would be penal. But because the purpose of the latter statute is to designate a reasonable ground of eligibility for voting, this law is sustained as a nonpenal exercise of the power to regulate the franchise." (Trop v. Dulles (1958) 356 U.S. 86, 95-97, 78 S.Ct. 590, 2 L.Ed.2d 630 (plurality opinion), fns. omitted.)
"Recently, the United States Supreme Court restructured its understanding of the ex post facto clause by rejecting certain expansive formulations that had developed over the years, and by returning the clause to its original meaning at the time the Constitution was framed. (Collins v. Youngblood (1990) 497 U.S. 37, 41-44 [110 S.Ct. 2715, 111 L.Ed.2d 30], approving Beazell v. Ohio (1925) 269 U.S. 167, 169-170 [46 S.Ct. 68, 70 L.Ed. 216], and Calder v. Bull (1798) 3 U.S. (3 Dall.) 386, 391 [1 L.Ed. 648] (opn. of Chase, J.).)" (Hubbart v. Superior Court (1999) 19 Cal.4th 1138, 1170, 81 Cal.Rptr.2d 492, 969 P.2d 584.) The U.S. Supreme Court clarified in Collins v. Youngblood (1990) 497 U.S. 37, 110 S.Ct. 2715, 111 L.Ed.2d 30, that the ex post facto clause does not forbid every change "which `alte[rs] the situation of a party to his disadvantage'" (id. at p. 50, 110 S.Ct. 2715), but only those retrospective laws which fit into one of the three categories reiterated in Beazell v. Ohio (1925) 269 U.S. 167, 169-170, 46 S.Ct. 68, 70 L.Ed. 216. (Collins v. Youngblood supra, 497 U.S. 37, 42-51, 110 S.Ct. 2715, 111 L.Ed.2d 30, overruling Kring v. Missouri (1883) 107 U.S. 221, 2 S.Ct. 443, 27 L.Ed. 506 and Thompson v. Utah (1898) 170 U.S. 343,18 S.Ct. 620, 42 L.Ed. 1061.)
"In Collins v. Youngblood (1990) 497 U.S. 37 [110 S.Ct. 2715, 111 L.Ed.2d 30] the court endorsed the view of its earlier decisions establishing that the ex post facto clause prohibits three categories of legislative acts: any provision `"[1] which punishes as a crime an act previously committed, which was innocent when done; [2] which makes more burdensome the punishment for a crime, after its commission, or [3] which deprives one charged with crime of any defense available according to law at the time when the act was committed....'" (Id. at p. 42 [110 S.Ct. 2715], quoting Beazell v. Ohio (1925) 269 U.S. 167, 169 [46 S.Ct. 68, 70 L.Ed. 216]; cf. People v. McVickers, supra, 4 Cal.4th at p. 84, 13 Cal.Rptr.2d 850, 840 P.2d 955.)" (People v. Snook (1997) 16 Cal.4th 1210, 1220-1221, 69 Cal.Rptr.2d 615, 947 P.2d 808.) "[T]he constitutional prohibition is addressed to laws, `whatever their form,' which make innocent acts criminal, alter the nature of the offense, or increase the punishment. [Citation.]" (Collins, supra, at p. 46,110 S.Ct. 2715.)
The California courts "interpret the ex post facto clause in the California Constitution no differently than its federal counterpart. (See People v. McVickers (1992) 4 Cal.4th 81, 84 [13 Cal.Rptr.2d 850, 840 P.2d 955]; Tapia v. Superior Court (1991) 53 Cal.3d 282, 295 [279 Cal.Rptr. 592, 807 P.2d 434]) Thus, United States Supreme Court precedent not only controls the federal constitutional question, *17 but also provides persuasive authority as to whether a statute is an ex post facto law under California law. (People v. Helms (1997) 15 Cal.4th 608, 614 [63 Cal.Rptr.2d 620, 936 P.2d 1230])" (People v. Snook, supra, 16 Cal.4th 1210, 1220, 69 Cal. Rptr.2d 615, 947 P.2d 808.)
In Kansas v. Hendricks (1997) 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501, the Supreme Court held that a Kansas act providing for civil commitment of sexually violent predators was not violative of the federal Constitution's ex post facto clause because involuntary confinement pursuant to the act was not punishment. (Id. at pp. 361-371, 117 S.Ct. 2072.) The court there observed that the two primary objectives of criminal punishment are retribution and deterrence. (Id. at pp. 361-362, 117 S.Ct. 2072.) It stated: "Although we recognize that a `civil label is not always dispositive,' [citation], we will reject the legislature's manifest intent only where a party challenging the statute provides `the clearest proof that `the statutory scheme [is] so punitive either in purpose or effect as to negate [the State's] intention to deem it "civil."' [Citation.]" (Id. at p. 361, 117 S.Ct. 2072.)
Nothing in the statutory scheme regarding certificates of rehabilitation suggests that any limitation on the opportunity to obtain a certificate is intended primarily to achieve the objectives of criminal punishment, i.e., to increase punishment for or deter others from committing the underlying crimes of which a petitioner was convicted. Instead, a certificate of rehabilitation is formal recognition of socially positive behavior following discharge from custody or release on parole or probation, a first step toward a gubernatorial pardon based upon rehabilitation.
Even if the 1996 amendment of section 4852.13 disadvantaged Lugas by reducing the opportunity for obtaining a certificate of rehabilitation, it does not necessarily follow that the statutory change, as applied to him, violated the constitutional prohibition of ex post facto laws. Lugas has not specified any disability that remains as a result of the application of section 4852.13, as amended in 1996, to his petition, and the consequent denial of the petition, that criminally punishes him for the crimes of which he was convicted.
Here, the defendant had already obtained a record clearance pursuant to section 1203.4. Subdivision (a) of that section provides that upon determining such relief should be granted, "the court shall thereupon dismiss the accusations or information against the defendant and except as noted below, he or she shall thereafter be released from all penalties and disabilities resulting from the offense of which he or she has been convicted, except as provided in Section 13555 of the Vehicle Code." (Italics added.) Section 1203.4, subdivision (a), further provides: "However, in any subsequent prosecution of the defendant for any other offense, the prior conviction may be pleaded and proved and shall have the same effect as if probation had not been granted or the accusation or information dismissed. The order shall state, and the probationer shall be informed, that the order does not relieve him or her of the obligation to disclose the conviction in response to any direct question contained in any questionnaire or application for public office, for licensure by any state or local agency, or for contracting with the California State Lottery. [¶] Dismissal of an accusation or information pursuant to this section does not permit a person to own, possess, or have in his or her custody or control any firearm capable of being concealed upon the person or prevent his or her conviction under Section 12021."
It has already been held that former Vehicle Code section 309[5] (now Veh.Code, *18 § 13555) does not constitute a penal statute within the meaning of the prohibition against ex post facto laws because the statutory intent is to protect the public rather than punish. (Ellis v. Dept. of Motor Vehicles (1942) 51 Cal.App.2d 753, 758, 125 P.2d 521 ["`A statute intended to protect the public is not ex post facto even though disqualifying a person, for past acts or omissions, from continuing his profession or business or continuing to own concealable firearms.'"])
In addition, "[t]he law is well established that ... the increased penalty for a prior [conviction] is attributable solely to the new, rather than the former, crime and its purpose is to discourage recidivist criminal conduct [citations]." (People v. Johnson (1979) 95 Cal.App.3d 352, 357, 157 Cal.Rptr. 150.) "Statutes imposing increased punishment for prior offenders are not new, and they have been before the courts on many occasions. The distinction pointed out above, between the offense and the offender, has been repeatedly emphasized. One of the apt illustrations is found in the contention that these statutes are unconstitutional, as ex post facto laws or for some other reason. The uniform answer has been that it is the second or subsequent offense which is punished, not the first; and that in determining the nature of the penalty to be inflicted, the legislature is justified in taking into consideration the previous criminal conduct of the defendant. [Citations.]" (People v. Biggs (1937) 9 Cal.2d 508, 512, 71 P.2d 214; see McDonald v. Massachusetts (1901) 180 U.S. 311, 313, 21 S.Ct. 389, 45 L.Ed. 542 ["The allegation of previous convictions is not a distinct charge of crimes, but is necessary to bring the case within the [habitual criminal] statute, and goes to the punishment only. The statute, imposing a punishment on none but future crimes, is not ex post facto"]; In re McVickers (1946) 29 Cal.2d 264, 270-271, 176 P.2d 40 [Statutes imposing increased punishment for prior offenders do not punish the prior offense but increase punishment for subsequent offenses].)[6]
Lastly, "[a]s a matter of public policy, the Legislature has made it a crime for convicted felons to possess firearms. (§ 12021, subd. (a)(1).) The purpose of this law is to protect public welfare by precluding the possession of guns by those who are more likely to use them for improper purposes. (People v. Bell (1989) 49 Cal.3d 502, 544 [262 Cal.Rptr. 1, 778 P.2d 129])" (People v. Pepper (1996) 41 Cal. App.4th 1029, 1037, 48 Cal.Rptr.2d 877.) Section 12021 has withstood many ex post facto challenges and courts have uniformly concluded that the law punishes the new conduct and not the earlier crime. (See e.g. People v. Mesce (1997) 52 Cal.App.4th 618, 622-626, 60 Cal.Rptr.2d 745; In re Evans (1996) 49 Cal.App.4th 1263, 1268-1269, 57 Cal.Rptr.2d 314; Helmer v. Miller (1993) 19 Cal.App.4th 1565, 1570-1571, 25 Cal.Rptr.2d 8; People v. Mills (1992) 6 Cal.App.4th 1278, 1283-1286, 1288-1289, 8 Cal.Rptr.2d 310.)
Unless and until Lugas identifies an increase in punishment resulting from the application of 1996 amendment of section 4852.13 to his petition, we must reject his ex post facto claim.[7]

D. Penal Code Section 3

Lugas contends that he "perfected" his right to petition for a certificate of *19 rehabilitation before the 1996 amendment of section 4852.13 and, therefore, application of that amendment to his petition violated Penal Code section 3. Section 3 states the general rule against retroactive application of any Penal Code provision: "No part of [the code] is retroactive, unless expressly so declared." (Pen.Code, § 3; cf. Civ.Code, § 3; Code Civ. Proc, § 3.) "That section simply embodies the general rule of construction, coming to us from the common law, that when there is nothing to indicate a contrary intent in a statute it will be presumed that the Legislature intended the statute to operate prospectively and not retroactively." (In re Estrada (1965) 63 Cal.2d 740, 746, 48 Cal.Rptr. 172, 408 P.2d 948; see Von Schmidt v. Huntington (1850) 1 Cal. 55, 65; see also People v. Hayes (1989) 49 Cal.3d 1260, 1274, 265 Cal.Rptr. 132, 783 P.2d 719 ["A new statute is generally presumed to operate prospectively absent an express declaration of retroactivity or a clear and compelling implication that the Legislature intended otherwise."])
"As the United States Supreme Court has recognized, `deciding when a statute operates "retroactively" is not always a simple or mechanical task' (Landgraf v. USI Film Products (1994) 511 U.S. 244, 268 [114 S.Ct. 1483, 128 L.Ed.2d 229]) and `comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event' (id. at p. 270 [114 S.Ct. 1483]). In exercising this judgment, `familiar considerations of fair notice, reasonable reliance, and settled expectations offer sound guidance.' (Ibid.)" (People v. Grant (1999) 20 Cal.4th 150, 157, 83 Cal.Rptr.2d 295, 973 P.2d 72.)
"In general, application of a law is retroactive only if it attaches new legal consequences to, or increases a party's liability for, an event, transaction, or conduct that was completed before the law's effective date. (Landgraf v. USI Film Products, supra, 511 U.S. 244, 269-270 & fn. 23 [114 S.Ct. 1483]; see also Rodriguez v. General Motors Corp. (9th Cir.1994) 27 F.3d 396, 398; Tapia v. Superior Court (1991) 53 Cal.3d 282, 291 [279 Cal.Rptr. 592, 807 P.2d 434]; Kizer v. Hanna (1989) 48 Cal.3d 1, 7 [255 Cal.Rptr. 412, 767 P.2d 679]; People v. Weidert (1985) 39 Cal.3d 836, 851 [218 Cal.Rptr. 57, 705 P.2d 380]) Thus, the critical question for determining retroactivity usually is whether the last act or event necessary to trigger application of the statute occurred before or after the statute's effective date. (Travenol Laboratories, Inc. v. U.S. (Fed.Cir.1997) 118 F.3d 749, 752; McAndrews v. Fleet Bank of Massachusetts, N.A. (1st Cir.1993) 989 F.2d 13, 16.) A law is not retroactive 'merely because some of the facts or conditions upon which its application depends came into existence prior to its enactment.' (Kizer v. Hanna, supra, 48 Cal.3d at p. 7 [255 Cal.Rptr. 412, 767 P.2d 679].)" (People v. Grant, supra, 20 Cal.4th at p. 157, 83 Cal.Rptr.2d 295, 973 P.2d 72.) As the Supreme Court observed in Tapia v. Superior Court (1991) 53 Cal.3d 282, 279 Cal. Rptr. 592, 807 P.2d 434, "it is evident that a law governing the conduct of trials is being applied `prospectively' when it is applied to a trial occurring after the law's effective date, regardless of when the underlying crime was committed or the underlying cause of action arose." (Id. at p. 289, 279 Cal.Rptr. 592, 807 P.2d 434.)
Evangelatos v. Superior Court (1988) 44 Cal.3d 1188, 246 Cal.Rptr. 629, 753 P.2d 585, which is cited by Lugas, is not on point. In that case, the California Supreme Court considered a newly approved initiative measure, which modified the traditional joint and several liability doctrine by limiting an individual tortfeasor's liability for noneconomic damages to a proportion equal to the tortfeasor's own percentage of fault. (Id. at p. 1192, 246 Cal.Rptr. 629, 753 P.2d 585.) It concluded that Civil Code section 3, which is identical to section 3 of the Penal Code, prevented the new law from being applied retroactively to the *20 tort causes of action which accrued prior to the measure's effective date. (Id. at pp. 1193-1194, 1205-1209, 246 Cal.Rptr. 629, 753 P.2d 585.) The court rejected an argument that the new law was being applied prospectively since the case came to trial after the effective date. (Id. at pp. 1205-1206, 246 Cal.Rptr. 629, 753 P.2d 585.)
Here, there is no legal right that accrues similar to a civil cause of action.[8] Under section 4852.01 et seq., eligible persons may petition for a certificate of rehabilitation after a minimum period of rehabilitation. (§ 4852.06; see § 4852.03.) A convicted felon's right to a certificate does not "accrue" once the minimum period of rehabilitation has elapsed. If that were so, the ex-felon could thereafter act with impunity and still be entitled to a certificate when a petition was subsequently filed. Rather, a petitioner's rehabilitation must continue and be evident at the time the court acts on the petition (§ 4852.13).
The 1996 amendment at issue here changed the provision governing consideration of a petition for a certificate of rehabilitation. In our view, the last act to trigger application of section 4852.13 as amended was the actual filing of the petition in 1997. At that time, existing law provided fair notice of the applicable judicial standard. Thus, section 4852.13 as amended in 1996 was applied prospectively to a petition filed after its effective date. The facts here do not present a retroactivity problem.
The order denying the petition for a certificate of rehabilitation is affirmed.
COTTLE, P.J., and PREMO, J., concur.
NOTES
[1] All further statutory references are to the Penal Code unless otherwise stated.
[2] Although Lugas asserts that the application of section 4852.13 as amended in 1996 to his petition violated his rights to due process, he does not present any separate argument or authorities addressed to that claim. Therefore, we assume that his due process claim is conterminous with his ex post facto claim and deem it waived to the extent it is not. (People v. Stanley (1995) 10 Cal.4th 764, 793, 42 Cal.Rptr.2d 543, 897 P.2d 481.)
[3] Section 4852.13, subdivision (b), which was added in 1996, provides that "[n]o certificate of rehabilitation shall be granted to a person convicted of any offense specified in Section 290 if the court determines that the petitioner presents a continuing threat to minors of committing any of the offenses specified in Section 290."
[4] Section 4852.15 expressly provides: "Nothing in this chapter shall be construed ... to require the reinstatement of the right or privilege to practice or carry on any profession or occupation the practice or conduct of which requires the possession or obtaining of a license, permit, or certificate. Nothing in this chapter shall affect any provision of Chapter 5 (commencing with Section 2000) of Division 2 of the Business and Professions Code or the power or authority conferred by law on the Board of Medical Examiners therein, or the power or authority conferred by law upon any board that issues a certificate permitting any person to practice or apply his or her art or profession on the person of another. Nothing in this chapter shall affect any provision of Chapter 4 (commencing with Section 6000) of Division 3 of the Business and Professions Code or the power or authority in relation to attorneys at law and the practice of the law in the State of California conferred by law upon or otherwise possessed by the courts, or the power or authority conferred by law upon the State Bar of California or any board or committee thereof."
[5] Former Vehicle Code section 309 read: "`A termination of probation and dismissal of charges pursuant to section 1203.4 of the Penal Code shall not affect any revocation or suspension of any license of the probationer under the provisions of this chapter. The probationer's prior conviction shall be considered a conviction for the purpose of revoking or suspending any license issued to him on the ground of two or more convictions.'" (Ellis v. Dept. of Motor Vehicles, supra, 51 Cal.App.2d 753, 757-758, 125 P.2d 521.)
[6] Even a pardon based on rehabilitation does not preclude consideration of the prior conviction for purposes of criminal punishment under a recidivist statute. (See People v. Biggs, supra, 9 Cal.2d at pp. 511-513, 71 P.2d 214; cf. § 3045 ["Any sentence based on conviction of crime of which the person was previously pardoned on the express ground that he was not guilty shall not be counted as a previous conviction."])
[7] A nonpunitive retroactive law is not a per se violation of due process. (In re Marriage of Bouquet (1976) 16 Cal.3d 583, 592, 128 Cal. Rptr. 427, 546 P.2d 1371.)
[8] "Under the statute of limitations, a plaintiff must bring a cause of action within the limitations period applicable thereto after accrual of the cause of action.... [¶] The general rule for defining the accrual of a cause of action sets the date as the time ... when the cause of action is complete with all of its elements." (Norgart v. Upjohn Co. (1999) 21 Cal.4th 383, 397, 87 Cal.Rptr.2d 453, 981 P.2d 79.) "An exception to the general rule for defining the accrual of a cause of action indeed, the `most important' oneis the discovery rule. [Citation.] ... It postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action. [Citations.]" (Norgart v. Upjohn Co., supra, 21 Cal.4th at p. 397, 87 Cal. Rptr.2d 453, 981 P.2d 79; cf. Buttram v. Owens-Coming Fiberglas Corp. (1997) 16 Cal.4th 520, 540, 66 Cal.Rptr.2d 438, 941 P.2d 71 ["[A] cause of action for damages arising from a latent and progressive disease such as asbestos-related pleural mesothelioma will be deemed to have `accrued'thereby precluding retroactive application of Proposition 51 under this court's holding in Evangelatosif the plaintiff was diagnosed with the disease for which damages are being sought, or otherwise discovered his asbestos-related illness or injuries prior to June 4, 1986, the effective date of Proposition 51."])